**BOARD OF TRUSTEES OF the MILL CABINET PENSION TRUST FUND FOR NORTHERN CALIFORNIA, Plaintiff–Appellant,**

v.

**VALLEY CABINET & MFG. CO., a corporation, Defendant,**

**and**

**Clifford B. Davis, executor of the estate of Robert J. Davis, Defendant–Appellee.**

No. 87–15091.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 16, 1988.

Decided June 8, 1989.

Jon B. Sigerman, Jon B. Sigerman, P.C., Christopher B. Bouvier, Law Offices of Robert M. Cassel, San Francisco, Cal., for plaintiff-appellant.

Robert L. Rediger, Hubbert, Shanley & Lee, Sacramento, Cal., for defendant-appellee.

Before HUG, TANG and BOOCHEVER, Circuit Judges.

BOOCHEVER, Circuit Judge:

The Board of Trustees of the Mill Cabinet Pension Trust Fund for Northern California (Fund) brought this action under 29 U.S.C. section 1451 (1982) of the Employee Retirement Income Security Act of 1974 (ERISA), to recover employer withdrawal liability. The Fund appeals from a judgment, following a bench trial, denying recovery against the estate of Robert J. Davis (estate) for payments owed by Valley Cabinet & Manufacturing Co. (Valley Cabinet) to the Fund. The Fund argues that the district court erred by refusing to pierce the corporate veil of Valley Cabinet and to hold the estate of its sole shareholder, Robert J. Davis, liable for payments owed to the ERISA fund.

We affirm the judgment of the district court.

## FACTS

Valley Cabinet was incorporated in 1959 in California. Shares of common stock were issued and were held by various individuals. Robert J. Davis was the controlling shareholder until 1982 when he became the sole shareholder. Between April, 1959 and December, 1981, Valley Cabinet was engaged in the manufacture and installation of cabinetry for residential and commercial buildings, at its peak doing business in excess of $1,000,000 a year and employing 40 employees.

For at least ten years Valley Cabinet participated in collective bargaining agreements with Millmen Local 1618 and contributed to the Fund pursuant to those agreements. The Fund is a multi-employer plan as defined in 29 U.S.C. section 1002(37)(A) (1982 & Supp.1986) and a pension plan as defined in 29 U.S.C. section 1002(2) (1982 & Supp.1986). In June 1981, Valley Cabinet's collective bargaining agreement with Millmen Local 1618 expired, and a strike began. As a result of an inability to reach agreement with the union, in August 1981 Valley Cabinet ceased making contributions to the Fund on behalf of its employees.

The Board of Directors of Valley Cabinet voted, in October of 1981, to close the business as of December 31, 1981 and to sell the assets of the company. All operations ceased on December 31, 1981, and on March 9, 1982, Valley Cabinet sold all of its operational assets for $100,000.

Davis owned the premises on which Valley Cabinet conducted its business and leased the premises to Valley Cabinet under a written lease agreement. Davis deferred these lease payments when Valley Cabinet had cash flow problems, and by December 31, 1981, the deferred payments totaled $22,100. This amount was reflected in the minutes of the October 5, 1981 board meeting, but the deferred lease payments were not listed in Valley Cabinet's accounting books, records, financial statements or tax returns. There was no interest assessed on the lease payments owed to Davis and the amount was unsecured.

Davis' salary, with bonus, was $75,000 a year. At the October 5, 1981 meeting of the Board of Directors, the Board resolved that Davis was to be responsible for the closing of operations at the plant and for the sale or lease of the equipment. The Board resolved that the back wages owed to Davis were to be paid before the final closing of the corporation. In fiscal year 1982 (April 1, 1982 to March 31, 1983), Davis received $25,000 in compensation and in fiscal year 1983 he received $15,500 in compensation. No back wages were reported in Valley Cabinet's accounting books, records, financial statements or tax returns. The trial court did not make a factual finding regarding the extent of the services Davis provided to Valley Cabinet during this period nor did the court explicitly find that the services provided warranted a full salary. The record is unclear on this point, although Valley Cabinet's tax return for fiscal year 1983 stated that Davis devoted 50% of his time to company business. The trial court found that Valley Cabinet owed Davis $50,000 in back wages for fiscal year 1982, and $59,500 for 1983.

During 1981 and 1982 several loan transactions between Davis and Valley Cabinet were completed. In 1981, Valley Cabinet borrowed $30,000 from Davis. Of this, $14,030 was repaid leaving an outstanding balance of $15,970. No interest was assessed on this loan, nor was it secured. The $15,970 debt was reflected on Valley Cabinet's accounting books, records, financial statements and tax returns for fiscal years 1982, 1983 and 1984. The debt was not recorded in the minutes of Valley Cabinet's Board of Directors meetings.

The parties agreed in the stipulated facts that in fiscal year 1982 Davis borrowed $9,700 from the corporation, in fiscal year 1983 he borrowed $89,000 and in fiscal year 1984 he borrowed $104,340 for a total debt of $203,040. These loans were made without a written loan agreement and without interest or security. These loans were reflected in Valley Cabinet's accounting books, records, financial statements and tax returns but they were not mentioned in

the minutes of the Board of Directors meetings.

In July 1982, the Fund notified Valley Cabinet of its assessment of $233,020 in withdrawal liability. The debt to the Fund was not recorded in the company accounting books, records, financial statements or tax returns. By letters on September 21, 1982 and October 5, 1982, Valley Cabinet requested the Fund to supply specific information in order for Valley Cabinet to evaluate the claim. In both letters, Valley Cabinet proposed an extension of time within which the dispute resolution procedures under ERISA (29 U.S.C. sections 1399 and 1401 (1982)) could be invoked, as an alternative to the prompt return of the requested information. Nearly three years later, the Fund supplied part of the information that Valley Cabinet requested. Shortly after the fund notified Valley Cabinet of the assessed withdrawal liability in 1982, Valley Cabinet's corporate counsel advised the officers of Valley Cabinet that Valley Cabinet did not owe any payments to the Fund.

Davis died in October of 1985, without having repaid the borrowed company money. Following Davis' death, the Fund filed a creditor's claim for payment of the withdrawal liability against Davis' estate. The estate denied the claim.

In 1986, Valley Cabinet failed to pay the minimum franchise tax and on April 1, 1987, it was suspended as a California corporation.

### PROCEEDINGS BELOW

The Fund filed a complaint to recover contributions owed it by Valley Cabinet and to hold the estate of Robert J. Davis liable for the contributions.

The district court, after a bench trial, rendered a judgment for the Fund in part and for the estate in part. The judgment for the Fund was against Valley Cabinet for the assessed withdrawal liability of $233,020, plus interest, plus liquidated damages as stated in the Trust Agreement and costs and fees including reasonable attorneys' fees incurred by the Fund in collecting the withdrawal liability. The judgment in favor of the estate was that the Fund take nothing against the estate.

### DISCUSSION

**I. Standard of Review and Applicable Law**

The district court's finding that Valley Cabinet's corporate shield was adequate to protect the estate from personal liability for the unpaid contributions to the Fund is subject to review under the clearly erroneous standard. *See Laborers Clean-Up Contract Admin. Trust Fund v. Uriarte Clean-Up Serv.*, 736 F.2d 516, 523 (9th Cir.1984). "In considering whether to disregard the corporate form, we apply federal substantive law, although we may look to state law for guidance." *Id.* (citation omitted).

**II. Disregard of Corporate Entity**

The determination of whether or not to pierce the corporate veil and hold a shareholder personally liable for corporate debts is based on three factors: "the amount of respect given to the separate identity of the corporation by its shareholders, the degree of injustice visited on the litigants by recognition of the corporate entity, and the fraudulent intent of the incorporators." *Seymour v. Hull & Moreland Eng'g*, 605 F.2d 1105, 1111 (9th Cir.1979); *see Laborers Clean-Up*, 736 F.2d at 524.

**A. Respect for the Separate Identity of the Corporation**

The district court found that the shareholders maintained and respected the separate corporate identity of Valley Cabinet. Valley Cabinet was adequately capitalized at its inception, shares of common stock were issued, board of directors meetings were held annually and at special times, and federal and state taxes were filed through 1984. In addition, proper records were kept of the board of directors meetings and other business.[1]

---

**1.** The record shows that on occasion, various business transactions were not recorded in the books (specifically, the lease payment deferments and the back wages owed to Davis by

■ The Fund directs our attention to the alleged commingling of Valley Cabinet's assets with those of Robert J. Davis. This Circuit has recognized commingling as among the more serious abuses of the corporate identity. *Seymour*, 605 F.2d at 1112. Even if the Fund demonstrated that commingling occurred, however, it does not necessarily follow that the district court clearly erred in holding that the Estate of Robert J. Davis should not be liable for the debts of Valley Cabinet. We have held that evidence establishing shareholder disrespect for a corporation's separate identity alone is an insufficient reason to pierce the corporate veil. *See Audit Serv. v. Rolfson*, 641 F.2d 757, 764 (9th Cir.1981); *see also Seymour*, 605 F.2d at 1112–113 (defendant's corporate veil was not pierced because fraudulent intent and injustice were not shown).

In *Audit Serv.* we held that the district court did not clearly err in finding that the first factor of the corporate piercing test had been established by evidence of commingling and evidence of a disregard of corporate formalities. Nevertheless, we reversed the district court's decision to pierce the corporate veil in *Audit Serv.* because there was no evidence of fraudulent intent or injustice. *Audit Serv.*, 641 F.2d at 764. Thus, even if the Fund prevailed on the first factor of the corporate piercing test by demonstrating that Davis commingled his personal assets with those of Valley Cabinet, it must additionally prove fraudulent intent or injustice.

### B. Fraudulent Intent

The Fund concedes that the incorporators of Valley Cabinet formed Valley Cabinet without fraudulent intent. The Fund, however, claims that this element may be satisfied by proof of post-incorporation misuse of the corporate form to perpetrate a fraud against creditors. On the other hand, Valley Cabinet contends that "[i]t is well established that for a court to pierce the corporate veil, *evidence of*

*fraudulent intent informing the corporation must be presented."* Valley Cabinet cites two cases to support this proposition. *See Seymour*, 605 F.2d at 1113; *see also Laborers Clean–Up*, 736 F.2d at 524 n. 12 ("Fraudulent intent cannot be established by the fact that Uriarte Clean–Up filed fraudulent reports to the Clean–Up Trust. There must be fraudulent intent in the forming of the corporation.").

Contrary to Valley Cabinet's assertions the law in this circuit is unclear. Both *Audit Services* and *Seymour* indicate that this element could be satisfied in one of two ways: either by proof of fraud in the formation of the corporation *or* fraudulent misuse of the corporate form after incorporation. *Audit Services*, 641 F.2d at 764 ("While the evidence showed that Marcus was sometimes careless in failing to observe the strict formalities of the corporate form, it fell far short of demonstrating any *deliberate misuse of the corporate form* or any fraudulent intent in forming it.") (emphasis added); *Seymour*, 605 F.2d at 1113 (fraudulent draining of the corporate assets cannot be inferred on the basis of bad financial times alone).

This court's decision in *Laborers Clean–Up* is distinguishable. In *Laborers Clean–Up*, footnote 12 deals only with an allegation that the corporation filed fraudulent reports to the Clean–Up Trust. Garden variety fraud should be insufficient to pierce the corporate veil in the absence of evidence of shareholder abuse of the corporate form to defraud creditors. In *Laborers* there was no allegation that the officers or the sole shareholder misused the corporate form to perpetuate their fraud. Thus footnote, 12 refers to fraud other than misuse of the corporate form and the final sentence stating that "[t]here must be fraudulent intent in the forming of the corporation" was unnecessary to the holding and dictum. In contrast, the Fund alleges in this case, that Davis misused the corporate form itself to defraud it by commingling his personal and corporate accounts, and by the use of interest free "loans". These allegations, unlike the alle-

Valley Cabinet). However, these transactions were noted in the minutes of the board of di-

rectors meetings.

gation in *Laborers Clean–Up*, demonstrate the type of post-incorporation misuse of the corporate form alluded to by this court in *Seymour* and *Audit Services.*

■ We perceive no valid distinction between forming a corporation with fraudulent intent and subsequently using a corporate shell to perpetrate a fraud. Consequently, we hold that post incorporation misuse of the corporate form in appropriate cases can satisfy the fraudulent intent element. Our holding better promotes the purposes of labor law and employee protection. *See, e.g.* Note, *Piercing the Corporate Veil: The Alter Ego Doctrine under Federal Common Law,* 95 Harv.L.Rev. 853 (1982) (the alter ego doctrine under federal common law can and should diverge from state law when necessary to effectuate the intent of Congress and the purpose of the federal law implicated).

■ We, thus, must determine whether Valley Cabinet misused the corporate form with fraudulent intent. The district court found that Davis did not have a fraudulent intent when he transferred $203,040 from Valley Cabinet to his personal account. There was evidence that Valley Cabinet did not believe that it owed money to the Fund. Valley Cabinet attempted to challenge the withdrawal liability assessment by requesting certain information from the Fund in 1982. The Fund failed to answer until it partially responded in 1985. Furthermore, Valley Cabinet's counsel advised Davis that Valley Cabinet did not owe contribution payments to the Fund, supporting an inference that Davis did not intend to defraud the trust when he transferred corporate assets to his personal account. While the transfer of the assets also supports a contrary inference, it was for the trial court to weigh these inferences in making its findings. The court did not clearly err by finding an absence of intent to defraud.

### C. The Degree of Injustice

■ The district court also found that the degree of injustice that the litigants may suffer does not justify piercing the corporate veil of Valley Cabinet. The "inability to collect [from an insolvent defen-

dant] does not, by itself, constitute an inequitable result." *Seymour,* 605 F.2d at 1113. Other remedies may be available if the Fund can show that the money was wrongfully transferred to Davis.[2] The Fund has failed to show that the trial court clearly erred in finding that injustice will not result from its holding that the estate is not liable for the corporate debts of Valley Cabinet.

### III. Attorney's Fees

■ Each side contends that it is entitled to recover attorney's fees and costs incurred in this appeal. The Fund seeks to recover all reasonable attorney's fees and costs under 29 U.S.C. section 1451(e) (1982) and pursuant to its trust fund agreement. Since the Fund did not prevail in this action, it is not entitled to attorney's fees under section 1451(e). Under the Fund's trust agreement the Fund is not entitled to recover costs in this appellate proceeding because the subject of this appeal does not concern an individual employer's default on trust contributions or payments. The Fund's agreement with Valley Cabinet does not cover an equitable claim against the estate of the sole shareholder of Valley Cabinet.

■ The estate seeks attorney's fees for this appeal under 29 U.S.C. section 1132(g) (1982 & Supp.1986). Fees are available under section 1132(g) for actions brought under subchapter I of ERISA. This action, however, was brought under 29 U.S.C. section 1451 which is not part of subchapter I. Section 1451(e) provides: "In any action under this section, the court may award all or a portion of the costs and expenses incurred in connection with such action, including reasonable attorney's fees, to the prevailing party." *Id.; see Cuyamaca Meats v. San Diego and Imperial Counties Butchers' & Food Employers' Pension Trust Fund,* 827 F.2d 491, 500 (9th Cir.1987), *cert. denied* —— U.S. ——, 108 S.Ct. 1474, 99 L.Ed.2d 703 (1988).

■ The following factors outlined in *Cuyamaca Meats* apply in deciding whether or not to award attorney's fees and costs under section 1451(e):

---

**2.** We note that the Fund is pursuing such remedies in state court.

(1) the culpability or good faith of the opposing party; (2) the ability of [the] opposing party to pay the award [of] fees; (3) the degree of deterrence which would result from an award of fees; (4) whether a number of participants under an ERISA plan would benefit from an award of fees; and (5) the relative merits of the parties' positions. *Hummel v. S.E. Rykoff & Co.*, 634 F.2d 446, 453 (9th Cir.1980)

*Id.* (quoting *West v. Greyhound Corp.*, 813 F.2d 951, 956 (9th Cir.1987)). In *Operating Eng'rs Pension Trust v. Gilliam*, 737 F.2d 1501, 1506 (9th Cir.1984), we stated that these "factors very frequently suggest that attorney's fees should not be charged against ERISA plaintiffs." *Id.* The Fund did not bring this appeal in bad faith, nor were its arguments without merit. On balance, the factors do not weigh in favor of the estate's request for attorney's fees.

In addition the estate seeks damages and double costs under Federal Rules of Appellate Procedure 38. The Fund's arguments were not frivolous, and we decline to impose sanctions.

The judgment of the district court is AFFIRMED.