In re Richard E. TOBIN, Debtor.

Richard E. Tobin, Appellant,

v.

Sans Souci Limited Partnership;
Michael S. Kogan; United
States Trustee, Appellees.

BAP No. CC–99–1640–BMOP.
Bankruptcy No. LA 98–53722–SB.
Adversary No. LA 99–01245–SB.

United States Bankruptcy Appellate Panel
of the Ninth Circuit.

Argued and Submitted Oct. 11, 2000.

Filed Jan. 22, 2001.

Donald Segretti, Costa Mesa, CA, for Richard E. Tobin.

Ira G. Rivin, Rutan & Tucker, LLP, Costa Mesa, CA, for Sans Souci Limited Partnership.

Before: BRANDT, MONTALI and PERRIS, Bankruptcy Judges.

## OPINION

BRANDT, Bankruptcy Judge.

Appellee Sans Souci Limited Partnership ("Sans Souci") sued debtor Richard E. Tobin ("Tobin"), his father Harold Tobin, The Cottages III, Inc., and other defendants in state court on several counts. The state court awarded Sans Souci judgment on breach of contract, intentional misrepresentation, promissory fraud, negligent misrepresentation and concealment, on the theory that the debtor and his father were alter egos of the corporate defendant, The Cottages III, Inc. Tobin filed for chapter 7[1] protection and Sans Souci filed an adversary proceeding for determination of nondischargeability under § 523(a)(2)(A) and other counts.

On Sans Souci's motion for summary judgment, the bankruptcy court applied collateral estoppel and found the debt nondischargeable under § 523(a)(2)(A).

Tobin timely appealed. We REVERSE and REMAND.

## I. FACTS

Tobin was a real estate agent in a real estate development business owned by his father, Harold Tobin. Harold Tobin's usual practice was to form a separate corporation for each development. In December 1994, he formed The Cottages III, Inc. ("The Cottages III") to build a development of single family homes in Nevada. Harold Tobin was the vice president and director of The Cottages III, and managed operations and project construction from his offices in Southern California. He asked Tobin to be the president of The Cottages III until the construction loans were funded. This structure was supposedly "to simplify financing as Harold Tobin had several other developments under con-

struction at the same time, and lenders did not want the complications of Harold Tobin's other projects; and speed to capture the market was important," according to appellant's opening brief.

The essence of the agreement between The Cottages III and Sans Souci was that Sans Souci would provide financing of $90,000, secured by a second deed of trust on three lots owned by The Cottages III. Days after Sans Souci supplied its financing, Harold Tobin shut down all of his companies, including The Cottages III, claiming that he "had run out of capital." The deeds of trust were not recorded, and would have been ineffectual anyway, because The Cottages III did not hold title to the already over-encumbered property. Sans Souci's loans were unsecured and unsatisfied.

In April 1995, Sans Souci sued Tobin and others in California Superior Court, and obtained summary judgment against Tobin, Harold Tobin, and others, jointly and severally for: (1) breach of contract; (2) intentional misrepresentation; (3) promissory fraud; (4) negligent misrepresentation; and (5) concealment. The state court made no findings relating to Tobin's *individual* conduct, but imposed liability on him as an alter ego, finding that (1) there was a "unity of interest" between The Cottages III, Harold Tobin, and Richard Tobin as a matter of law; and (2) invoking the doctrine of alter ego would accomplish justice and equity and defeat fraud and unfairness. Tobin's appeal to the California Court of Appeals is pending.

Tobin sought chapter 7 protection in November 1998. Sans Souci filed an adversary proceeding asking the state court judgment be determined nondischargeable under § 523(a)(2)(A), which excepts from discharge debts for fraud and false representations. (The complaint is not in the excerpts of record. However, from the

---

1. Absent contrary indication, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330. All "Rule" references are to the Federal Rules of Bankruptcy Procedure, and "FRCP" references, to the Federal Rules of Civil Procedure.

docket it appears that Sans Souci also sought nondischargeability under §§ 523(a)(2)(B), (a)(4), and (a)(6).) Sans Souci moved for summary judgment, invoking the doctrine of collateral estoppel to give effect to the state court judgment. Tobin opposed, but did not make a cross-motion.

Without analyzing the elements of collateral estoppel, the bankruptcy court adopted the state court's findings and conclusions as final and binding, holding, in pertinent part:

> So long as there's a state court judgment, that's the end of the inquiry, as far as I'm concerned. That's a matter you have to take to the appellate—to the state appellate court. This is not an appellate court on that subject....

It entered partial summary judgment determining the debt nondischargeable pursuant to § 523(a)(2)(A), but denied summary judgment under § 523(a)(4). The findings and conclusions stated, in pertinent part, that there was no genuine issue that the state court judgment established all the elements of § 523(a)(2)(A), and confirmed the award of damages on the fraud claims of $123,522, plus costs and attorney fees. By order entered 27 April 2000, the bankruptcy court dismissed the remainder of Sans Souci's causes of action, rendering final the partial summary judgment on appeal. Tobin timely appealed.[2]

## II. JURISDICTION

The bankruptcy court had jurisdiction via 28 U.S.C. § 1334 and § 157(b)(1) and (b)(2)(I), and we do under 28 U.S.C. § 158(c).

## III. ISSUES

1. Whether the bankruptcy court erred by giving collateral estoppel effect to the state court's determination; and

2. Whether the bankruptcy court erred in determining, on summary judgment, that the debt is nondischargeable under § 523(a)(2)(A).

## IV. STANDARDS OF REVIEW

■ A. We review summary judgment de novo. *Baldwin v. Kilpatrick (In re Baldwin)*, 245 B.R. 131, 134 (9th Cir. BAP 2000). We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the trial court correctly applied relevant substantive law. *Graulty v. Brooks (In re Bishop, Baldwin, Rewald, Dillingham & Wong, Inc.)*, 819 F.2d 214, 215 (9th Cir. 1987).

■ B. The availability of collateral estoppel is a question of law we review de novo. *Krishnamurthy v. Nimmagadda (In re Krishnamurthy)*, 209 B.R. 714, 718 (9th Cir. BAP 1997), *aff'd*, 125 F.3d 858 (9th Cir.1997) (table decision).

## V. DISCUSSION

### A. *Collateral Estoppel*

■ The first issue is whether the bankruptcy court erred in giving collateral estoppel effect to the state court's determination. The doctrine of collateral estoppel, or issue preclusion, is meant to protect parties from multiple lawsuits and the risk of inconsistent decisions, and to conserve judicial resources. *Baldwin*, 245 B.R. at 134. Where properly applied, collateral estoppel bars relitigation of issues determined in the state court. Collateral estoppel applies in dischargeability proceedings. *Grogan v. Garner*, 498 U.S. 279, 284–85, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). The burden of proof is on the party seeking to assert collateral estoppel, who "must introduce a record sufficient to reveal the controlling facts and pinpoint the exact

2. BAP Appeal No. CC–99–1640 is the appeal of the order for partial summary judgment in favor of plaintiff entered on 24 September 1999. BAP Appeal No. CC–99–1641 is an appeal of the same order. By order of 14 March 2000, both orders on appeal were deemed final and the two appeals were consolidated.

issues litigated in the prior action." *Kelly v. Okoye (In re Kelly)*, 182 B.R. 255, 258 (9th Cir. BAP 1995), *aff'd*, 100 F.3d 110 (9th Cir.1996).

 The preclusive effect of a state court judgment is determined by the law of the state in which the judgment was entered. *Gayden v. Nourbakhsh (In re Nourbakhsh)*, 67 F.3d 798, 800 (9th Cir. 1995). Under California law a prior judgment is entitled to collateral estoppel effect if it meets five elements:

(1) The issue sought to be precluded from relitigation must be identical to that decided in a former proceeding;

(2) The issue must have been actually litigated in the former proceeding;

(3) It must have been necessarily decided in the former proceeding;

(4) The decision in the former proceeding must be final and on the merits; and

(5) The party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding.

*Baldwin*, 245 B.R. at 134.

### 1. *Identity of Issues*

 Sans Souci argues that elements of § 523(a)(2)(A) are identical to elements of state law actions for intentional misrepresentation and promissory fraud. Dischargeability of a debt is a question of federal law, and is governed by the Bankruptcy Code. Section 523(a)(2)(A) excepts from discharge any debt for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud. Under this section,

the creditor must establish: (1) that the debtor made a representation; (2) the debtor knew at the time the representation was false; (3) the debtor made the representation with the intention and purpose of deceiving the creditor; (4) the creditor relied on the representation;

and (5) the creditor sustained damage as the proximate result of the representation.

*Apte v. Japra (In re Apte)*, 96 F.3d 1319, 1322 (9th Cir.1996) (citations omitted).

 Promissory fraud is a subspecies of the action for fraud and deceit. *Downey Venture v. LMI Ins. Co.*, 66 Cal. App.4th 478, 510, 78 Cal.Rptr.2d 142, 161 (1998). Under California law, the elements of promissory fraud are identical to the elements of common law fraud, when the misrepresentation at issue is a promise made without intent to perform. *See Service by Medallion, Inc. v. Clorox Co.*, 44 Cal.App.4th 1807, 1816, 52 Cal.Rptr.2d 650, 655 (1996). The elements of § 523(a)(2)(A) "mirror the elements of common law fraud" and match those for actual fraud under California law, which requires that the plaintiff show: (1) misrepresentation; (2) knowledge of the falsity of the representation; (3) intent to induce reliance; (4) justifiable reliance; and (5) damages. *Younie v. Gonya (In re Younie)*, 211 B.R. 367, 373–74 (9th Cir. BAP 1997), *aff'd*, 163 F.3d 609 (9th Cir.1998) (table decision).

 We agree that the state court complaint alleged all of the required elements for promissory fraud under California law, including that Tobin knew his representations, through The Cottages III, were false and that Sans Souci relied on those representations in making the loan. However, the state court made no finding that Tobin personally made any false representation with the intention and purpose of deceiving Sans Souci.

### 2. *Actually Litigated*

While the transcript of the state court summary judgment hearing is not in the record before us, the parties do not dispute (and we infer from the state court judgment) that the issues were litigated at summary judgment.

### 3. *Necessarily Decided*

The parties do not dispute that this element is satisfied.

### 4. *Finality*

The parties do not dispute that this element is satisfied.

### 5. *Same Parties*

The parties do not dispute that this element is satisfied.

The state court's findings were entitled to collateral estoppel effect.

### B. *Nondischargeability*

 The bankruptcy judge opined that he could not, given the state court's judgment, "look at" its alter ego finding. If by that remark he meant Tobin's alter ego status was established, he was correct. If he meant that nondischargeability necessarily followed, he erred: the question is whether the facts the state court found render its judgment against Tobin nondischargeable.

To prevail at summary judgment, Sans Souci must show that there are no material issues of fact on the five elements set forth in *Apte*, 96 F.3d at 1322 (and quoted in part A.1. above), and that it is entitled to judgment as a matter of law.

 The element here in question is the first: was there a representation by the debtor? The bankruptcy court did not address the central issue: may a fraudulent representation, imputed to an individual debtor/defendant as a corporate alter ego, be the basis for nondischargeability where there is no evidence the debtor himself made any representations to the creditor or knowingly participated in the fraudulent scheme?

 "Where corporate and individual affairs are badly intermingled and it would be unjust to recognize the distinction between individuals and corporations, courts will hold the individuals liable for corporate debts and vice versa." 4 Daniel R. Cowans, *Bankruptcy Law and Practice*, § 16.8, p. 147 (7th ed.1998) (hereafter "Cowans").

> The determination of whether or not to pierce the corporate veil and hold a shareholder personally liable for corporate debts is based on three factors: the amount of respect given to the separate identity of the corporation by its shareholders, the degree of injustice visited on the litigants by recognition of the corporate entity, and the fraudulent intent of the incorporators.

*Board of Trustees of Mill Cabinet Pension Trust Fund v. Valley Cabinet & Mfg. Co.*, 877 F.2d 769, 772 (9th Cir.1989) (citation omitted). Here, the state court findings establish the first two factors, and that court considered the "fraudulent intent of the incorporators" factor. Still, "[d]isregard of distinct corporate entity is of course the exception to the norm." Cowans, § 16.8, p. 149.

Several courts have considered vicarious nondischargeability. In *Laborers Clean–Up Contract Admin. Trust Fund v. Kay (In re Kay)*, 60 B.R. 174 (Bankr.C.D.Cal. 1986), the bankruptcy court found the debtor and two co-defendants jointly and severally liable for submitting false statements on behalf of a corporation. The court there also found that the debtor had himself knowingly made false representations. *Id.* at 175–76.

In *Hodnett v. Loevner (In re Loevner)*, 167 B.R. 824 (Bankr.E.D.Va.1994), the debtor was an officer, director and 50% shareholder of a financial planning corporation who controlled the investment of client funds and daily corporate operations. The bankruptcy court concluded that, under Virginia law, he was the alter ego of the corporation, and the debt was nondischargeable under § 523(a)(2)(A). The key finding for nondischargeability was that it was the debtor who made the investment decisions concerning client funds. *Id.* at 826–27.

In a case decided under the Bankruptcy Act, *Industrie Aeronautiche E. Meccaniche Rinaldo Piaggio S.p.A. v. Kasler (Matter of Kasler)*, 611 F.2d 308 (9th Cir. 1979), the Ninth Circuit noted, in dicta, that a debtor who was the alter ego of a corporation could be "nondischargeably liable" for willful and malicious conduct of the corporation's employees and of his co-alter ego, even if there was no evidence that the debtor himself uttered the statements in question:

> Indeed, there is not even any evidence that Kasler himself, rather than some other employee of World Jet [Aircraft Inc.], uttered the libelous and disparaging statements. But since World Jet was the alter ego of Kasler, all employees of World Jet are considered to have been employees of Kasler.... And if the statements were made ... by Kasler's son, his co-alter-ego and "partner," Kasler would be non-dischargeably liable by direct application of *McIntyre [v. Kavanaugh,* 242 U.S. 138, 142, 37 S.Ct. 38, 61 L.Ed. 205 (1916)].

*Id.* at 309–10 n. 3. Notably, the Circuit reiterated the principle "that exceptions to dischargeability should be strictly construed in order to serve the Bankruptcy Act's purpose of giving debtors a fresh start." *Id.* at 310 (citations omitted).

In *RecoverEdge L.P. v. Pentecost,* 44 F.3d 1284 (5th Cir.1995), the creditor had a judgment against the debtor for breach of contract. The creditor also had a judgment against debtor's co-defendants for fraud, but the debtor was *not* found jointly and severally liable for fraud. Distinguishing *Kay* and *Kasler,* the Fifth Circuit declined to impute the fraud of the co-defendants to the debtor for the purpose of § 523(a)(2)(A). *Id.* at 1296–97.

An analogy could be made to imputing liability between partners along the lines of *Impulsora Del Territorio Sur, S.A. v. Cecchini (In re Cecchini),* 780 F.2d 1440 (9th Cir.1986), where the Circuit found the debt owing by one partner, Cecchini, non-dischargeable, but also had to determine whether the debt owing by the other partner, Robustelli, was. Although there was no evidence of Robustelli's direct involvement in converting the funds, applying basic partnership law, the court considered Robustelli to have participated in the benefits of his partner's misconduct, which had been undertaken on behalf of the partnership and in the ordinary course of business. The court imputed Cecchini's knowledge and intent to Robustelli, and held the latter's debt nondischargeable under § 523(a)(6). *Id.* at 1444.

The Ninth Circuit has since questioned *Cecchini.* In *La Trattoria, Inc. v. Lansford (In re Lansford),* 822 F.2d 902, 904–905 (9th Cir.1987), it declined to apply a strict agency principle, finding it inconsistent with the principle of affording debtors fresh starts. *See also California State Bank v. Lauricella (In re Lauricella),* 105 B.R. 536, 539 n. 3 (9th Cir. BAP 1989), where the panel noted that the standard in *Cecchini* for imputing liability under agency principles might be overly broad.

Another analogy may be vicarious denial of discharge between spouses. In *Lansdowne v. Cox (In re Cox),* 41 F.3d 1294 (9th Cir.1994), the issue was whether one spouse should be denied a discharge under § 727 based primarily on the other's fraudulent business record keeping. The Ninth Circuit examined the degree of the wife's involvement in the husband's business transactions, and whether her reliance on her husband to keep books and records was objectively reasonable in the totality of the circumstances. The Circuit reversed the order denying her discharge. *Id.* at 1298–1300.

In all these cases except *Kasler* and *Cecchini,* the individual debtor also participated in the misrepresentation or fraudulent scheme. *Kasler's* dicta suggests no personal involvement is necessary, but its authority is questionable, and the Circuit itself has questioned its analogue, *Cecchini.* Here, the state court findings are consistent with Tobin's declaration that he

neither knowingly participated in the fraudulent scheme nor made representations to Sans Souci in connection with its loans to The Cottages III. Sans Souci introduced no contradictory evidence; summary judgment in its favor was improper.

We need not, and do not, here decide whether participation in a fraudulent scheme, without more, would suffice. *See RecoverEdge*, 44 F.3d at 1293–1294 (implying that it might) and *Aetna Cas. & Surety Co. v. Markarian (In re Markarian)*, 228 B.R. 34, 39 (1st Cir. BAP 1998) (same, in dicta).

### VI. CONCLUSION

While Tobin's liability under the state court judgment is undisputed, we decline to uphold the nondischargeability of that vicarious liability under the meager *Kasler* dicta in light of the Ninth Circuit's own questioning of the continuing authority of *Cecchini*. We REVERSE and REMAND.