**In re JUNG SUP LEE and Kyung Cha Lee, Debtors.**

**Jung Sup Lee, Appellant,**

v.

**Tcast Communications, Inc., Appellee.**

**BAP No. WW–04–1505–JUMAS.
Bankruptcy No. 03–17022.
Adversary No. 04–01117.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted July 22, 2005.

Filed Nov. 9, 2005.

Ordered Published Dec. 14, 2005.

Alan J. Wenokur, Seattle, WA, for appellant.

Patrick F. Hussey, Anderson Hunter Law Firm, P.S., Everett, WA, for appellee.

Before: JURY,[1] MARLAR and SMITH, Bankruptcy Judges.

## OPINION

JURY, Bankruptcy Judge.

After Jung Sup Lee ("Lee") and his wife, Kyung Cha Lee, filed for bankruptcy, TCAST Communications, Inc. ("TCAST") filed a complaint against Lee to determine whether a certain debt owed to it was non-dischargeable pursuant to § 523(a)(2)(A).[2] TCAST moved for summary judgment in the adversary proceeding, which the bankruptcy court granted in its favor. Lee timely appealed.

Based on issue preclusion, claim preclusion, and full faith and credit, we AFFIRM the bankruptcy court's decision.

## I.   FACTS

Lee operated TTI Telecommunications, Inc. ("TTI"), a Washington corporation which sold long-distance calling cards wholesale to retailers. On October 25, 2000, TTI entered into a written carrier service agreement ("Agreement") with TCAST. Under the Agreement, TTI agreed to pay fees to TCAST in order to provide telephone communication services to TTI. Specifically, TTI agreed to tender a cash deposit in advance based on one month of projected use. TTI also agreed to pay an increased advance deposit as it increased its usage over time. Later, TCAST agreed to allow TTI to pay current

---

1. Hon. Meredith A. Jury, Bankruptcy Judge for the Central District of California, sitting by designation.

2. *Unless otherwise indicated, all chapter, section, and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330 and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.*

charges on a weekly basis in lieu of an increased deposit.

Between May 7 and May 18, 2001, TTI tendered five checks to TCAST, totaling $369,380.84, in payment for its services. The checks bounced due to insufficient funds.

TCAST filed a complaint against TTI and Lee on various causes of action, including fraud and breach of contract, in the Los Angeles County (California) Superior Court. In its complaint, TCAST requested both compensatory and punitive damages against TTI and Lee. Although TCAST specified the amount of compensatory damages in its complaint, it failed to specify an amount for punitive damages.[3]

Lee, appearing through counsel, filed an answer to the complaint. TCAST served a set of interrogatories on Lee, to which Lee and TTI failed to respond. After issuing two lesser discovery sanctions, the court, upon motion by TCAST, granted terminating sanctions, striking the answer, granting default judgment against TTI and Lee, and awarding compensatory and punitive damages. The court entered the default judgment, awarding both compensatory and punitive damages, on February 14, 2002.

TCAST registered the California default judgment in Washington on June 13, 2002. Lee moved to set aside the California default judgment in the King County (Washington) Superior Court on the grounds that the California court lacked personal jurisdiction and that he had no notice of the discovery requests, claiming he failed to respond due to excusable neglect caused by the negligence of his California counsel. The court denied the motion, finding an insufficient basis for collateral attack and that the California default judgment was entitled to full faith and credit ("Washington judgment").

Lee and his wife filed a voluntary Chapter 11 petition on May 29, 2003, which case was converted to Chapter 7 on October 11, 2003. TCAST filed a non-dischargeability complaint under § 523(a)(2)(A) against Lee on March 11, 2004.[4] TCAST first moved for summary judgment under the doctrine of issue preclusion (i.e., collateral estoppel) with respect to the compensatory damages portion of the state court judgment. The bankruptcy court granted the motion for summary judgment, reserving the issue of non-dischargeability of the punitive damages portion of the judgment for later determination. The bankruptcy court entered its decree with respect to the compensatory damages ("compensatory damages decree") on June 24, 2004.

TCAST then moved for summary judgment with respect to the punitive damages portion of the judgment under the Rooker–Feldman doctrine and claim preclusion (i.e., res judicata). The bankruptcy court granted the motion, finding that claim preclusion fully applied to the issues actually raised by Lee before the Washington court in its review of the California default judgment, as well as to other issues that Lee could and should have raised at that time.

---

**3.** TCAST requested $251,268.25 in compensatory damages but only requested punitive damages "in an amount to punish TTI and Lee and to deter others from engaging in similar misconduct." Complaint for Breach of Contract, Common Counts, Fraud, and Violation of Civ.Code § 1719 (June 5, 2001), at 28. TCAST later provided an amount for punitive damages in a declaration in support of the entry of judgment, filed February 1, 2002. In the declaration, TCAST requested an award of $369,380.84 in punitive damages. *See* Declaration of Joel Wadman in Support of Entry of Judgment (February 1, 2002), at 51.

**4.** It appears from the record that TCAST named Lee as the only defendant in the adversary proceeding.

The bankruptcy court also found that the *Rooker–Feldman* doctrine barred it from reviewing the California and Washington judgments. The bankruptcy court then entered its decree with respect to the punitive damages award ("punitive damages decree") on September 30, 2004. Lee filed his notice of appeal of both decrees on October 6, 2004.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. § 1334 and § 157(b)(1) and (b)(2). This panel has jurisdiction under 28 U.S.C. § 158(b)(1).

## III. ISSUES

(1) Whether the bankruptcy court erred in granting summary judgment for TCAST by finding that issue preclusion rendered the compensatory damages portion of the state court judgment non-dischargeable under § 523(a)(2)(A).

(2) Whether the bankruptcy court erred in granting summary judgment for TCAST by finding that full faith and credit barred it from reviewing the Washington judgment in its consideration of the punitive damages portion of the judgment.

(3) Whether the bankruptcy court erred in granting summary judgment for TCAST by finding that claim preclusion barred Lee from asserting claims he could and should have made before the Washington court in its review of the punitive damages portion of the California default judgment.[5]

## IV. STANDARD OF REVIEW

■ We review the summary judgment of the bankruptcy court de novo. *Tobin v. Sans Souci Ltd. P'ship (In re*

*Tobin)*, 258 B.R. 199, 202 (9th Cir. BAP 2001) (citation omitted). Viewing the evidence in the light most favorable to the non-moving party, we must determine "whether there are any genuine issues of material fact and whether the trial court correctly applied relevant substantive law." *Id.* (citation omitted).

■ We review the applicability of issue preclusion de novo. *Id.* (citation omitted). We review the applicability of claim preclusion de novo. *United States v. Schimmels (In re Schimmels)*, 127 F.3d 875, 880 (9th Cir.1997) (citation omitted).

## V. DISCUSSION

### A. *Compensatory Damages*

Lee argues that the bankruptcy court erred in finding that issue preclusion applied to the compensatory damages portion of the default judgment because TCAST failed to establish all the elements of issue preclusion required for § 523(a)(2)(A) non-dischargeability. Specifically, Lee asserts that TCAST did not establish that the issue of fraud was actually litigated and necessarily decided.

Lee contends that § 523(a)(2)(A) requires a creditor to show that the debtor directly obtained its services through fraudulent conduct. Lee asserts, however, that he did not obtain the services of TCAST through his misrepresentations; TCAST had provided its services *before* Lee issued the bad checks. Furthermore, even if Lee had obtained the services of TCAST by issuing these bad checks, only that portion of the debt incurred through such fraud is non-dischargeable. The California court made no such findings, however. As such, Lee concludes, the issue of

---

5. Because we conclude that the bankruptcy court correctly applied issue preclusion and claim preclusion to the Washington judgment, we do not need to reach the issue of whether

the bankruptcy court was prohibited from reviewing the Washington judgment by the *Rooker–Feldman* doctrine.

whether he obtained the services of TCAST through fraud had not been actually litigated and necessarily decided.

Lee's argument fails, however, because § 523(a)(2)(A) does not require a finding of a receipt of a benefit through the fraudulent conduct. *Muegler v. Bening,* 413 F.3d 980, 983–84 (9th Cir.2005).

■ The doctrine of issue preclusion applies to dischargeability proceedings under § 523(a). *Grogan v. Garner,* 498 U.S. 279, 284 n. 11, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). When determining the effect of a state court judgment, we must apply, as a matter of full faith and credit, the state's law of issue preclusion. *Gayden v. Nourbakhsh (In re Nourbakhsh),* 67 F.3d 798, 800 (9th Cir.1995).

■ Under California law, issue preclusion applies only if all of the following requirements have been met:

(1) The issue sought to be precluded must be identical to that decided in the former proceeding;

(2) The issue must have been actually litigated in the former proceeding;

(3) The issue must have been necessarily decided in the former proceeding;

(4) The decision in the former proceeding must be final and on the merits;

(5) The party against whom issue preclusion is sought must be the same as, or in privity with, the party to the former proceeding.

*See Harmon v. Kobrin (In re Harmon),* 250 F.3d 1240, 1245 (9th Cir.2001) (citations omitted).

■ The party asserting issue preclusion has the burden of establishing these requirements. *Id.* (citation omitted).

■ Section 523(a)(2)(A) provides that a discharge does not include any debt for money, property, or services "*to the extent obtained by* false pretenses, a false representation, or actual fraud" (emphasis added). In order to establish that the debt had been obtained through fraud and is thus non-dischargeable under § 523(a)(2)(A), the creditor must demonstrate, by a preponderance of evidence, that:

(1) The debtor made representations;

(2) The debtor knew the representations had been false at the time he or she made them;

(3) The debtor made these representations with the intent and purpose of deceiving the creditor;

(4) The creditor relied on such representations; and

(5) The creditor sustained the alleged loss and damage as a proximate result of these representations.

*See American Express Travel Related Services v. Hashemi (In re Hashemi),* 104 F.3d 1122, 1125 (9th Cir.1996).

■ The elements of fraud under § 523(a)(2)(A) match the elements of common law fraud and of actual fraud under California law. *Younie v. Gonya (In re Younie),* 211 B.R. 367, 373–74 (9th Cir. BAP 1997), *aff'd* 163 F.3d 609 (9th Cir. 1998) (citations omitted).

Lee contends that § 523(a)(2)(A) requires the creditor to show that it had sustained damages by providing services which the debtor directly obtained through his or her fraudulent conduct. In other words, Lee asserts that TCAST must demonstrate that he issued the checks *in exchange for* its services. Lee argues that the phrase "obtained by" requires TCAST to show, in addition to the fraud, that Lee obtained a benefit from his fraudulent conduct.[6]

6. Lee cites *Fleming v. Preston (In re Preston),* 47 B.R. 354 (E.D.Va.1983) and *Snap–On*

■ A recent Ninth Circuit decision clarifies that there is no additional requirement for § 523(a)(2)(A) nondischargeability. *See Muegler v. Bening,* 413 F.3d 980 (9th Cir.2005). Rather, the only consideration material to a determination of the debt's non-dischargeability is whether the debt arose from fraud. *Id.* at 983 (citation omitted).

The Ninth Circuit held that "a [mere] finding of debt due to fraud is *all* that is necessary to satisfy § 523(a)(2)(A)." *Id.* at 984 (emphasis added). In *Muegler,* the federal district court found the debtor guilty of committing intentional fraud under Missouri law. *Id.* at 981. A jury awarded the creditors compensatory and punitive damages. *Id.* The debtor attempted to discharge his debt to his creditors through bankruptcy. *Id.* The creditors then initiated an adversary proceeding against the debtor, moving for summary judgment under § 523(a)(2)(A). *Id.* at 982. The bankruptcy court ruled in favor of the creditors, finding that issue preclusion barred the debtor from challenging the fraud ruling. *Id.* On appeal, the debtor contended that the creditors failed to establish all of the elements of issue preclusion for fraud—specifically, identity of the issues—under Missouri law. *Id.* at 982. The debtor argued that § 523(a)(2)(A) required the creditors to show that he obtained a direct or indirect benefit from his misrepresentations. *Id.* Since the Missouri jury did not need to find that the debtor obtained such a benefit from his fraud, the debtor maintained that the creditors failed to establish identity of the issues necessary for issue preclusion under § 523(a)(2)(A). *Id.*

The Ninth Circuit held that the court did not need to determine that the debtor received a benefit in order to establish fraud under § 523(a)(2)(A). *Id.* at 984. The Ninth Circuit acknowledged that it had previously found that a debtor must receive a direct or indirect benefit from his or her fraudulent conduct. *Id.* at 983 (citing *In re Arm,* 87 F.3d 1046, 1049 (9th Cir.1996)). The court noted, however, that these decisions occurred *before* the decision of the Supreme Court in *Cohen v. de la Cruz,* 523 U.S. 213, 223, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998). *Muegler,* 413 F.3d at 983. In *Cohen,* the Supreme Court ruled that a simple finding of debt arising from fraud is sufficient to meet the requirements of § 523(a)(2)(A). *Id.* (citation omitted). Based on the holding in *Cohen,* the Ninth Circuit held that "[i]t is only the fact of an adverse fraud judgment, and nothing more, that is required for a debt to be non-dischargeable .... [thus] the receipt of a benefit is no longer an element of fraud under § 523(a)(2)(A)." *Id.* at 984.

■ Applying the *Muegler* holding to the instant case, the bankruptcy court did not need a California finding that Lee had directly obtained services from TCAST, by issuing the bad checks, in order to determine that the debt based on fraud was non-dischargeable. The fraud finding alone was sufficient.[7]

*Tools Corp. v. Couch (In re Couch),* 154 B.R. 511 (Bankr.S.D.Ind.1992) to support his argument that because he had already incurred the debt before he issued the checks, he did not "obtain" the services of TCAST through the checks. In *Preston* and *Couch,* the debtors obtained the loans or property from the creditors before they issued the bad checks to repay the creditors. Here, under the Agree-

ment, Lee could not obtain the services of TCAST without first paying it. Thus, unlike the debtors in *Preston* and *Couch,* Lee obtained the services by reason of issuing the bad checks.

7. TCAST also set forth sufficient facts to demonstrate that the damages it sustained were the proximate result of Lee's fraudulent con-

## B. *Punitive Damages*

Lee contends that the bankruptcy court erred in giving the Washington judgment preclusive effect under full faith and credit because the underlying default judgment was void under California law. Lee argues that although California law allows a trial court to award punitive damages,[8] the California court exceeded its jurisdiction by granting $369,380.84 in punitive damages because TCAST failed to specify that amount in its complaint and Lee had no prior notice of the amount.

Lee also asserts that claim preclusion does not prevent him from raising the issue of whether the punitive damages portion of the California default judgment was void because no final determination has ever been made on that issue. He asserts that he did not raise the issue before the Washington court and the Washington court did not bar him from raising it in the California court. Lee further contends that the *Rooker–Feldman* doctrine did not prevent the bankruptcy court from reviewing the Washington judgment because it involved an issue of non-dischargeability, which falls within the exclusive jurisdiction of the bankruptcy court.

Contrary to the arguments advanced by Lee, the bankruptcy court could not review the Washington judgment because: (1) full faith and credit compelled the bankruptcy court to recognize and enforce the Washington judgment; and (2) claim preclusion prevented the bankruptcy court from redetermining the issues that were already raised before the Washington court, plus any issues that Lee failed to assert.

### 1. *Full faith and credit bars the bankruptcy court from reviewing the Washington judgment.*

28 U.S.C. § 1738 provides that the judicial proceedings of any court "shall have the same full faith and credit in every court of the United States ... as they have by law or usage in the courts of such State". As such, federal courts must give state court judgments the same preclusive effect that those judgments would enjoy under the law of the state in which the judgment was rendered. *Far Out Productions, Inc. v. Oskar*, 247 F.3d 986, 993 (9th Cir.2001).

Here, the bankruptcy court was asked to review the Washington judgment. Under full faith and credit, the bankruptcy court must apply Washington state law in determining whether it should give preclusive effect to the Washington judgment.

Under Washington state law, full faith and credit requires courts to recognize and enforce valid sister-state judgments. *Effert v. Kalup (In re Marriage of Effert)*, 45 Wash.App. 12, 723 P.2d 541, 542 (1986). Generally, the validity of a sister-state judgment cannot be collaterally attacked unless the sister-state court lacked

---

duct pursuant to § 523(a)(2)(A). TCAST demonstrated in the California action that TTI and Lee induced TCAST to continue providing services by tendering the checks, even though neither TTI nor Lee had sufficient funds to honor them. Had TCAST known this circumstance, TCAST would have discontinued its services. The fact that TCAST had requested a compensatory damage award less then the total amount of the checks indicates that the award was the actual value of services induced by Lee's fraud and did not include any pre-existing debt.

8. California Code of Civil Procedure ("CCP") § 3294(a) provides: "[i]n an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant." CAL. CIV. CODE § 3294(a) (West 2004).

personal or subject matter jurisdiction, committed a constitutional violation, or issued a judgment obtained through fraud. *Id.; State v. Berry,* 141 Wash.2d 121, 5 P.3d 658, 662 (2000). Absent such circumstances, a party may not challenge the sister-state judgment. *See Effert,* 723 P.2d at 542–43. In other words, the Washington court will recognize and enforce a sister-state judgment even if such judgment was based on an error of law or fact. *See id.; see also e.g., Idaho Dep't. of Health & Welfare v. Holjeson,* 42 Wash. App. 69, 708 P.2d 661, 664–65 (1985).

■■■ Here, though Lee attempted to collaterally attack the California default judgment in the bankruptcy court, he did not collaterally attack the Washington judgment. Lee did not allege that the Washington court lacked jurisdiction, violated his constitutional rights, or issued a judgment produced through fraud. Rather, Lee collaterally attacked the California default judgment, even though the bankruptcy court lacked the power to review it. The judgment subject to the review of the bankruptcy court was the Washington judgment, not the underlying California default judgment.

2. *Claim preclusion bars the bankruptcy court from reviewing the Washington judgment.*

■■■ Under the doctrine of claim preclusion, a party cannot bring a claim "if a court of competent jurisdiction has rendered a final judgment on the merits of the claim in a previous action involving the same parties or their privies." *Siegel v. Federal Home Loan Mortgage Corp.,* 143 F.3d 525, 528 (9th Cir.1998) (quoting *Robertson v. Isomedix, Inc. (In re Int'l Nutronics),* 28 F.3d 965, 969 (9th Cir.1994)). Claim preclusion applies "where: (1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) there was a final judgment on the merits; and (4) the same claim or cause of action was involved in both suits." *Rein v. Providian Fin. Corp.,* 270 F.3d 895, 899 (9th Cir.2001) (citing *Owens v. Kaiser Found. Health Plan, Inc.,* 244 F.3d 708, 713 (9th Cir.2001); *Siegel,* 143 F.3d at 528–29).

■■■ All of the elements of claim preclusion are present in the instant case. First, both of the motions before the bankruptcy court and the Washington court involved Lee and TCAST. Second, the Washington court, as a court of general jurisdiction, had the power to hear and decide the motion to set aside the California default judgment. WASH. REV. CODE ANN. § 2.08.010 (West 2005). Third, the Washington court also entered an order denying the motion with prejudice in the Washington court on the ground that Lee failed to establish a sufficient basis to collaterally attack the California default judgment. Finally, Lee made the same claim before the bankruptcy court and the Washington court—that the default judgment was void under California law. Since all the necessary elements are satisfied, claim preclusion bars further review.

## VI. CONCLUSION

The bankruptcy court correctly granted summary judgment on the compensatory damages portion of the state court judgment in favor of TCAST. TCAST met all the elements necessary for issue preclusion under § 523(a)(2)(A) by showing that the issue of fraud had been actually litigated and necessarily decided. Under current Ninth Circuit case law, § 523(a)(2)(A) does not require the bankruptcy court to find whether Lee received a benefit through his misrepresentation, but only to find whether the debt arose from the fraudulent conduct. TCAST only needed to demonstrate that it sustained damages

as a proximate result of Lee's fraud. Therefore, the issue was actually litigated and necessarily decided by virtue of the entry of the California default judgment. As such, issue preclusion applied.

The bankruptcy court also correctly granted summary judgment in favor of TCAST on the punitive damages portion of the judgment. Although the default judgment may have been void under California law, full faith and credit prevented the bankruptcy court from reviewing the Washington judgment. Furthermore, because the Washington court made a final judgment involving the same parties and the same claim regarding the validity of the California default judgment, the doctrine of claim preclusion applied.

AFFIRMED.