**NOT FOR PUBLICATION**

## UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: ) | BAP No.   CC-14-1286-KiKuD |
| ) | |
| HAI LECONG, ) | Bk. No.   2:09-40568-ER |
| ) | |
| Debtor. ) | Adv. No.  10-01161 |
| _____ ) | |
| ) | |
| HAI LECONG, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | **M E M O R A N D U M**[1] |
| ) | |
| ASHLEY TRAN, ) | |
| ) | |
| Appellee. ) | |
| _____ ) | |

Argued and Submitted on February 19, 2015,
at Los Angeles, California

Filed - May 6, 2015

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Ernest M. Robles, Bankruptcy Judge, Presiding

Appearances:   Lewis R. Landau argued for appellant, Hai Lecong;
Gregory M. Salvato argued for appellee, Ashley
Tran.

Before:   KIRSCHER, KURTZ and DUNN, Bankruptcy Judges.

---

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1.

Chapter 7[2] debtor Hai Lecong ("Debtor") appeals an order granting summary judgment to appellee, Ashley Tran ("Tran"), wherein the bankruptcy court determined that a state court judgment in favor of Tran was excepted from Debtor's discharge under § 523(a)(2)(A) on the basis of issue preclusion. We AFFIRM.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A. Events leading to the state court litigation

Tran is a dentist. Her sister, Lauren Tran ("Lauren"), is an attorney and general contractor. Debtor is a licensed California real estate agent and mortgage broker. Lauren and Debtor, as business associates, engaged in various enterprises in the building supply and construction business.

Debtor and Lauren met sometime before 1996, when Lauren performed legal services for a company owned by Debtor and his former business associate, which manufactured and sold cultured marble and synthetic kitchen and bath materials. Lauren eventually expressed an interest in becoming a shareholder in the business.

In about 1998, Debtor, his former associate and Lauren formed a new entity, Excelstone International, Inc. ("Excelstone"), which manufactured and sold Corian countertops. To purchase her one-third share of the business, Lauren borrowed $60,000 from Tran, which Lauren orally agreed to pay back within two years at 10% interest ("First Loan"). Eventually, Lauren and Debtor bought out the former associate's interest in Excelstone, and in 1999,

---

[2] Unless specified otherwise, all chapter, code and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

-2-

Lauren and Debtor formed a new entity called Lexcel Solid Surfacing, Inc. ("Lexcel"). Excelstone was dissolved in 1998.

Shortly after the First Loan, Lauren asked Tran for an additional $65,000 to invest in Excelstone/Lexcel, which Lauren again orally promised to pay back in two years at 10% interest ("Second Loan"). Tran provided the $65,000 for the Second Loan. Lauren claimed Tran made the Second Loan to Excelstone/Lexcel; Tran claimed she made the Second Loan to Lauren and Debtor. In any event, Tran conceded that at the time of the First Loan and Second Loan she did not speak with Debtor, only Lauren. However, Tran understood that Debtor was responsible for both loans along with Lauren because they involved the duo's business. Tran also provided a loan of $30,000 to Lauren and Debtor for the purchase of two company cars.

At some point, the oral loan agreements were modified to provide that the proceeds from the First Loan and Second Loan would be used by Lauren and Debtor to build a single family residence in Whittier, California, which would be either transferred to Tran or sold and the sale proceeds used to repay her. Ultimately, Lauren and Debtor used the funds from Tran to construct a residence for Debtor and his wife, who apparently still occupy the Whittier property. Debtor's wife holds title to the Whittier property.

From 1999 to 2004, Tran made several requests for repayment of the First Loan and Second Loan, but no payments were made.

In or around 2004, Lauren decided to open a showroom to boost company sales. In late 2004, Lauren formed an entity called Goldenwest Kitchen & Bath, Inc. to operate the showroom. To pay

-3-

for this venture, Lauren forged a series of checks on a HELOC account owned by Tran totaling $70,000. When Tran confronted Lauren about the forgeries, Lauren orally agreed to pay back the funds on the same terms as the First Loan and Second Loan, within two years at 10% interest (the "HELOC Loan").

At some point, Lauren and Debtor told Tran they did not have the monies to repay any of the loans, although they made oral assurances to her that they would repay them. On or about September 19, 2007, Lauren and Debtor signed a promissory note in favor of Tran providing that each owed Tran one-half of a $135,000 debt ("Note"). The Note accounted for the $65,000 Second Loan and the $70,000 HELOC Loan. The Note required full repayment by September 12, 2008, and superseded any other prior notes. Debtor conceded that he and Lauren were obligated on the Note.

In November 2007, Tran filed suit against Lauren, Debtor, their related business entities and Debtor's wife for a variety of claims, including breach of contract, fraud and conversion. In her later-filed first amended complaint ("FAC"), Tran alleged with respect to the fraud claim:

> At the times Defendants made the promises [to repay the loans], as well as the time that Defendants reaffirmed and ratified said promises to Plaintiff as alleged above, they expressly and impliedly represented to her that there existed in their then present state of mind an intention to keep the said promises.
>
> The said representations were false, and each time Defendants made them, they knew they were false.
>
> At the time Defendants made the promises, as well as the time of the said representations, and at the times of the reliance by Plaintiff, as herein alleged, Plaintiff believed that the said representations were true.
>
> At all times herein mentioned, Defendants intended to defraud and deceive Plaintiff by causing her to act to

-4-

her detriment in reliance upon her belief in the truth of Defendants' said representations.

In reasonable reliance upon Plaintiff's belief in the truth of Defendant's [sic] said representations, she acted as above-described and lent the Defendants the sum of Two Hundred Twenty-Five Thousand Dollars ($225,000).

Were it not for Plaintiff's trust and confidence in Defendants as her fiduciaries, and her said reliance upon and belief in the trust of his [sic] said representations, Plaintiff would not have acted as hereinabove alleged.

By reason of the said fraud and deceit, Plaintiff has suffered damages measured by the dollar amount of the loss of the benefit of her bargain — either repayment of the loan plus interest or transfer of title to real property . . . .

Tran also alleged claims for emotional distress and punitive damages, totaling $50,000.

The case was tried before a jury on three causes of action — breach of contract and fraud against Lauren and Debtor, and conversion against Lauren. As to Debtor, the jury found in favor of Tran and assessed $230,335 in damages for fraud and breach of contract. The jury also awarded Tran $50,000 in noneconomic damages for emotional distress and $50,000 in punitive damages. The jury found Lauren liable for fraud and breach of contract in the amount of $407,993, as well as conversion and other damages. The jury also found against Lexcel, Goldenwest and two other entities involving Lauren and Debtor. Lauren and Debtor were jointly and severally liable for the $230,335 breach of contract and fraud award to Tran.

The jury's special verdict ("Judgment") made the following findings with respect to the fraud claim against Debtor:

19. That Debtor made a false promise that was important to the transaction to Tran;

-5-

20. That Debtor knew the promise to Tran was false when made, or that he made the promise recklessly and without regard for the truth;

21. That Debtor intended for Tran to rely on the promise;

22. That Tran reasonably relied on Debtor's promise;

23. That Tran suffered harm in reliance on Debtor's promise; and

24. That Tran's reliance on Debtor's promise was a substantial factor in causing harm to Tran.

The parties appealed the Judgment to the California Court of Appeal. Specifically, Debtor contended that insufficient evidence existed of his fraud to support the jury verdict.

**B.   Postpetition events**

While the appeal of the Judgment was pending, Debtor filed a chapter 7 bankruptcy case on November 3, 2009.

**1.   Tran's nondischargeability complaint**

Tran alleged that the Judgment was excepted from Debtor's discharge under § 523(a)(2)(A) and (a)(4). The bankruptcy court stayed Tran's nondischargeability action while the parties pursued the appeal of the Judgment.

**2.   The Court of Appeal decision**

The California Court of Appeal reversed the awards of noneconomic and punitive damages against Debtor and a portion of the breach of contract award, but upheld the fraud award of $230,335. It rejected Debtor's contention that no evidence existed in the record that he made any false promises to Tran.

The appellate court first noted that the jury found Debtor knowingly or recklessly, without regard for the truth, made false promises to Tran, with the intention that she rely on them. The

-6-

jury further found that she relied on the promises, causing her damage. The appellate court also observed that Debtor had taken responsibility for at least some of the unpaid loans by signing the Note, and that the money went into companies in which he was a principal. Debtor had further promised Tran that the HELOC Loan would be paid back with the proceeds from the sale of the Whittier property, which never transpired.

Ultimately, the appellate court concluded:

"[t]here was substantial evidence that [Debtor] was at least complicit with Lauren in connection with promises regarding repayment of the loans, including interest. The evidence that [Debtor] defrauded [Tran] is based upon the promise that Lauren borrowed money with a promise to pay back the money; Lauren's promise to pay the money back was false because she never had any intention to pay back the money; [Debtor] was involved in these promises because the monies went to the companies in which he was a principal; and [Debtor] continued to participate in promising [Tran] she would be repaid, including out of the sale of real property that was not sold. . . . The evidence of his conduct after the loans suggests his involvement with the false promises. There is evidence [Tran] forbeared in pursuing collection of monies owed her based on the promises."

The state court later entered a Second Amended Judgment to reflect the appellate court's decision. It reaffirmed that Debtor was liable to Tran for fraud damages of $230,335.

**3. Tran's motion for summary judgment**

Subsequently, Tran moved for summary judgment on her § 523(a)(2)(A) claim ("MSJ"). In essence, Tran contended that because the jury's fraud findings in the Judgment established the elements for a fraud claim under § 523(a)(2)(A), and given the finality of the Judgment, she was entitled to summary judgment on the basis of issue preclusion. In support, Tran attached the FAC, the Judgment, the California Court of Appeal decision and the

-7-

Second Amended Judgment reflecting the appellate court's decision.

Debtor opposed the MSJ, disputing that the elements for issue preclusion and § 523(a)(2)(A) were met. With respect to issue preclusion, Debtor conceded the Judgment was final, on the merits, and involved the same parties. However, he contended Tran had failed to show that the issues were identical; she did not offer the jury instructions or court order establishing that fraud for purposes of § 523(a)(2)(A) was the same type of fraud that was litigated in the prior action. Debtor contended that Tran had also failed to establish with any pleadings or evidence that the fraud issue was actually litigated in the prior action. For example, argued Debtor, the issue of whether Lauren's acts could be imputed to him under agency principles was never litigated before the state court. Debtor contended these same grounds supported his argument for why the fraud issue was also not necessarily decided.

As for the elements of Tran's § 523(a)(2)(A) claim, Debtor contended: he made no misrepresentations to Tran; no evidence supported his alleged knowledge of any falsity or his intent to deceive Tran; she did not justifiably rely on his misstatements or conduct; and Tran did not suffer damages as a proximate result of any misrepresentation.

Much of Debtor's opposing argument was based on his erroneous assertion the bankruptcy court could not consider the Judgment or the appellate court decision because they were "inadmissible hearsay," which the court properly rejected. Notwithstanding, Debtor contended he made no representations to Tran before she loaned the money to Lauren, and the Judgment failed to identify

-8-

what he allegedly said or when. While Debtor conceded the appellate court's finding that his statement about the companies making good on some of the loans was "circumstantial evidence" of a fraudulent promise to repay, Debtor argued this was not enough to satisfy the first element of § 523(a)(2)(A). Debtor further contended the appellate court's determination that he was involved with the false promises because the monies went to his companies showed, at best, only constructive fraud.

Debtor also claimed there was no evidence to show that he intended to deceive Tran when the alleged representations were made and his reassurances of repayment were not enough to show intent to deceive under § 523(a)(2)(A). In addition, Debtor disputed Tran's justifiable reliance, contending he had nothing to do with procuring the loans. Tran admitted at trial that she never discussed the terms of any of the loans with Debtor until October 2007 — years after they were given. Finally, Debtor argued that proximate cause and damages were not established because he did not cause Tran to make the loans and therefore suffer damages for failure to repay them.

In reply, Tran argued that Debtor was seeking to relitigate the factual findings and legal conclusions already resolved by the Judgment and affirmed by the California Court of Appeal. Tran contended the bankruptcy court's only concern was whether the findings made in the Judgment were sufficient for her debt to be excepted from discharge under § 523(a)(2)(A) or whether further factual issues remained; it was not to "look behind" the Judgment to determine whether it was properly entered. Tran argued that the elements for common law fraud in California mirrored those

under § 523(a)(2)(A) and that the jury's specific and detailed findings made it clear that a claim for "actual fraud" was actually litigated and necessarily decided in the prior action.

**4.    The bankruptcy court's ruling on the MSJ**

Prior to the scheduled hearing on the MSJ, the bankruptcy court issued a tentative ruling, which it ultimately adopted and incorporated into its Memorandum Decision, granting the MSJ on the basis of issue preclusion.  The court determined that the jury had made findings for a fraud cause of action sufficient for § 523(a)(2)(A) based on the claim alleged in the FAC.  As for Debtor's requisite intent when he made representations to Tran, the court reasoned that "the jury must have so found by reference to the [FAC] which alleges that the defendants, including Debtor, **knew the representations were false each time they were made, and intended to defraud and deceive [Tran]**."  The court further concluded that the jury's finding of Tran's "reasonable" reliance on Debtor's false promise met the lower standard of "justifiable" reliance required for § 523(a)(2)(A).  Finally, the jury had found that Tran was damaged as a result of Debtor's fraud in the amount of $230,335.

The parties made their arguments at the MSJ hearing.  In response to Debtor's argument that the bankruptcy court was relying on the FAC as evidence, the court stated it was not taking the allegations of the FAC as any sort of proof, but only determining whether the jury's findings were consistent with the FAC.  Debtor then proceeded to argue that one could not tell from the Judgment what sort of fraud was litigated in the prior proceeding, actual or some other kind, and the following colloquy

-10-

ensued:

> THE COURT: What you want to do is to have this Court not only occupy the State Court's position, but also the jury's position. And they said yes when asked, did Hai Lecong make a false promise. It's fairly clear.
>
> MR. COHON: Wait a minute. Where -- where is the evidence of the false promise? Because here is the issue.
>
> THE COURT: I'm not dealing with the evidence. I'm just dealing with the response to Number 19.

Hr'g Tr. (Jan. 8, 2013) 14:7-14. After hearing further argument from the parties, the court took the matter under advisement to review cases cited by Debtor's counsel.

The bankruptcy court issued its Memorandum Decision and entered a judgment excepting the Judgment debt of $230,335 from discharge under § 523(a)(2)(A). Recapping Debtor's position at the MSJ hearing, Debtor had argued that the debt to Tran was not excepted from discharge under § 523(a)(2)(A) because he was not involved in the discussions between Tran and Lauren, and did not actively participate in Lauren's fraud. Debtor had also argued that the jury found he made a false promise to Tran only because they imputed Lauren's statements to him based on their business relationship. Debtor argued that while misrepresentations could be imputed for purposes of finding fraud under state law, imputation was not a proper basis for nondischargeability under § 523(a)(2)(A).

Relying on an unpublished Panel decision, Babian v. Tamamian (In re Babian), 2013 WL 646386, at *5 (9th Cir. BAP Jan. 4, 2013), which cited Tsurukawa v. Nikon Precision, Inc. (In re Tsurukawa), 287 B.R. 515, 525 (9th Cir. BAP 2002), the bankruptcy court concluded that Debtor was incorrect; actual fraud could be imputed

-11-

to a debtor under partnership/agency principles. Thus, based on the appellate court's decision (and Debtor's counsel's concession) that Lauren and Debtor were business partners, the bankruptcy court found that Lauren's fraud could be imputed to Debtor for purposes of Tran's claim under § 523(a)(2)(A).[3]

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUE

Did the bankruptcy court err when it granted Tran summary judgment on her claim under § 523(a)(2)(A) by applying issue preclusion to the Judgment?

## IV. STANDARDS OF REVIEW

The bankruptcy court's order granting summary judgment is reviewed de novo. Shahrestani v. Alazzeh (In re Alazzeh), 509 B.R. 689, 692-93 (9th Cir. BAP 2014). "Viewing the evidence in the light most favorable to the non-moving party, we must determine 'whether there are any genuine issues of material fact and whether the trial court correctly applied relevant substantive law.'" New Falls Corp. v. Boyajian (In re Boyajian), 367 B.R. 138, 141 (9th Cir. BAP 2007)(quoting Tobin v. San Souci Ltd. P'ship (In re Tobin), 258 B.R. 199, 202 (9th Cir. BAP 2001)).

We also review de novo the preclusive effect of a judgment; whether issue preclusion is available is a mixed question of law

---

[3] Debtor's initial appeal of the nondischargeability judgment was dismissed as interlocutory because the bankruptcy court had not yet determined Tran's claim under § 523(a)(4). Once the court entered an order dismissing that claim, Debtor timely appealed the nondischargeability judgment.

-12-

and fact. Stephens v. Bigelow (In re Bigelow), 271 B.R. 178, 183 (9th Cir. BAP 2001). If issue preclusion is available, the bankruptcy court's decision to apply it is reviewed for abuse of discretion. Lopez v. Emergency Serv. Restoration, Inc. (In re Lopez), 367 B.R. 99, 104 (9th Cir. BAP 2007). Under that standard, we reverse where the bankruptcy court applied an incorrect legal rule or where its application of the law to the facts was illogical, implausible or without support in inferences that may be drawn from the record. Ahanchian v. Xenon Pictures, Inc., 624 F.3d 1253, 1258 (9th Cir. 2010)(citing United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009)(en banc)).

We can affirm on any ground supported by the record, regardless of whether the bankruptcy court relied upon, rejected, or even considered that ground. Fresno Motors, LLC v. Mercedes Benz USA, LLC, 771 F.3d 1119, 1125 (9th Cir. 2014).

**V. DISCUSSION**

**A.    Summary judgment standards**

Summary judgment is appropriate where the movant shows that no genuine dispute of material fact exists and the movant is entitled to judgment as a matter of law. Civil Rule 56(a) (applicable in adversary proceedings under Rule 7056). The bankruptcy court views the evidence in the light most favorable to the nonmoving party in determining whether any genuine disputes of material fact exist and whether the movant is entitled to judgment as a matter of law. Fresno Motors, LLC, 771 F.3d at 1125.

**B.    Issue preclusion standards**

The doctrine of issue preclusion applies to dischargeability proceedings under § 523(a). Grogan v. Garner, 498 U.S. 279, 284

-13-

n.11 (1991). In determining the effect of a state court judgment, we must apply, as a matter of full faith and credit, the state's law of issue preclusion. Gayden v. Nourbakhsh (In re Nourbakhsh), 67 F.3d 798, 800 (9th Cir. 1995); Jung Sup Lee v. Tcast Commc'ns, Inc. (In re Jung Sup Lee), 335 B.R. 130, 136 (9th Cir. BAP 2005).

Under California law, a prior judgment is entitled to issue preclusive effect if all five of the following requirements are met:

(1) The issue sought to be precluded must be identical to that decided in the former proceeding;

(2) The issue must have been actually litigated in the former proceeding;

(3) The issue must have been necessarily decided in the former proceeding;

(4) The decision in the former proceeding must be final and on the merits;

(5) The party against whom issue preclusion is sought must be the same as, or in privity with, the party to the former proceeding.

Harmon v. Kobrin (In re Harmon), 250 F.3d 1240, 1245 (9th Cir. 2001); Lucido v. Super. Ct., 51 Cal.3d 335, 341 (1990). Even if all five requirements are satisfied, however, California places an additional limitation on issue preclusion: courts may give preclusive effect to a judgment "only if application of preclusion furthers the public policies underlying the doctrine." In re Harmon, 250 F.3d at 1245 (citing Lucido, 51 Cal.3d at 342).

The party asserting preclusion bears the burden of establishing these threshold requirements. Id. This burden means providing "a record sufficient to reveal the controlling facts and pinpoint the exact issues litigated in the prior action." Kelly v. Okoye (In re Kelly), 182 B.R. 255, 258 (9th Cir. BAP 1995),

-14-

aff'd, 100 F.3d 110 (9th Cir. 1996). Any reasonable doubt as to what was decided by a prior judgment should be resolved against allowing the [issue preclusive] effect." Id.

The bankruptcy court initially ruled that based on the jury's express findings of actual fraud and the cause of action alleged in the FAC, the jury had found Debtor liable for actual fraud, and therefore he was precluded from relitigating that issue. Accordingly, Tran's fraud damages were excepted from discharge under § 523(a)(2)(A). The bankruptcy court also determined, as a separate and sufficient basis, the Judgment supported a finding that Debtor was imputedly liable for Lauren's fraud.

**C. The bankruptcy court did not err in applying issue preclusion to the Judgment.**

Debtor spends a great deal of time disputing the bankruptcy court's finding of imputed fraud, contending that Lauren's fraud could not be imputed to him because nothing in the record establishes that he knew or should have known of Lauren's fraud. Debtor, however, glosses over the bankruptcy court's initial ruling that Tran's debt was nondischargeable based on his actual fraud found by the jury, the basis on which we affirm. Debtor does not dispute that the Judgment was final and on the merits, and that the parties are the same. Therefore, we only address the first three elements of issue preclusion.

**1. Identity of issues**

Section 523(a)(2)(A) excepts from discharge any debt for money, property, services or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation or actual fraud. The creditor bears the burden of

-15-

demonstrating, by a preponderance of the evidence, each of the following five elements: (1) misrepresentation, fraudulent omission or deceptive conduct by the debtor; (2) knowledge of the falsity or deceptiveness of the representation or omission; (3) an intent to deceive; (4) the creditor's justifiable reliance on the representation or conduct; and (5) damage to the creditor proximately caused by reliance on the debtor's representations or conduct. Ghomeshi v. Sabban (In re Sabban), 600 F.3d 1219, 1222 (9th Cir. 2010).

The "identical issue" requirement addresses whether "identical factual allegations" are at stake in the two proceedings. Lucido, 51 Cal.3d at 342. "The elements of § 523(a)(2)(A) 'mirror the elements of common law fraud' and match those for actual fraud under California law, which requires the plaintiff to show: (1) misrepresentation; (2) knowledge of the falsity of the representation; (3) intent to induce reliance; (4) justifiable reliance; and (5) damages." In re Tobin, 258 B.R. at 203 (citing Younie v. Gonya (In re Younie), 211 B.R. 367, 373-74 (9th Cir. BAP 1997), aff'd, 163 F.3d 609 (9th Cir. 1998) (table decision)).

The FAC alleged what appears to be a cause of action for actual and/or promissory fraud. The elements of a fraud claim based on a false promise are (1) a promise by the defendant (2) made without an intent to perform and (3) made with the intent to induce reliance by the plaintiff, followed by (4) reasonable reliance by the plaintiff that results in (5) injury to the plaintiff. CAL. CIV. CODE §§ 1572, 1710; Lazar v. Super. Ct., 12 Cal.4th 631, 638 (1996). "'Promissory fraud' is a subspecies

-16-

of the action for fraud and deceit. A promise to do something necessarily implies the intention to perform; hence, where a promise is made without such intention, there is an implied misrepresentation of fact that may be actionable fraud." Lazar, 12 Cal.4th at 638. See also Rubin v. West (In re Rubin), 875 F.2d 755, 759 (9th Cir. 1989)(a promise made with a positive intent not to perform or without a present intent to perform satisfies § 523(a)(2)(A)).

The FAC alleged the required elements for either cause of action, including that Debtor had made promises or representations to Tran that he never intended to keep and/or knew were false at the time he made them, that he intended for Tran to rely on the false promises or representations, and that Tran reasonably relied on the false promises or representations and suffered damages as a result. In the special verdict supporting the Judgment, the jury expressly found that Debtor made a knowing false promise he intended Tran to rely on, that Tran reasonably relied on the false promise and that she suffered harm as a result. Although the jury found "reasonable" reliance as opposed to the "justifiable" reliance required under § 523(a)(2)(A), a finding of reasonable reliance meets the lower standard of justifiable. Tallant v. Kaufman (In re Tallant), 218 B.R. 58, 69 (9th Cir. BAP 1998). The Judgment, therefore, was an adjudication of a fraud claim identical to that required to find the debt nondischargeable under § 523(a)(2)(A).

**2.  Actually litigated and necessarily decided**

Debtor argues "the record contains no factual determinations that could support a fraud claim under § 523(a)(2)(A)." Debtor

-17-

contends that if his fraud could not be established as a matter of vicarious liability based on Lauren's actions, the bankruptcy court was required to find that he made fraudulent representations to Tran, that he knew were false, with intent to deceive, upon which Tran justifiably relied and which proximately caused her damage. Debtor contends the bankruptcy court failed to identify what "allegedly false representation" he made to Tran and that we are unable to determine whether the allegedly false representation arose out of operation of imputed fraud or is based on some representation by Debtor.

What Debtor fails to recognize is that when faced with a prior judgment where a jury has made express findings of actual fraud that satisfy the elements of a claim under § 523(a)(2)(A), the bankruptcy court is not required to "look behind" that judgment to determine whether the factual record supported it, or whether or not any representation was made. That was the role of the California Court of Appeal, which affirmed the actual fraud judgment against Debtor.

Given the jury's findings in the special verdict, it is clear that the issue of actual fraud was actually litigated and necessarily decided in the prior state court proceedings. The FAC specifically alleged that Debtor made false promises and representations to Tran, that he made them knowingly with the intent to defraud and deceive her and that Tran reasonably relied on them to her detriment. The jury's express findings that Debtor was liable for each element of actual/promissory fraud necessarily included a determination of all of the facts required for such a claim under California law, which mirrors the elements of

-18-

§ 523(a)(2)(A).  The jury awarded Tran damages of $230,335 based on Debtor's fraud, which the appellate court affirmed.

Accordingly, the bankruptcy court properly applied issue preclusion to the jury's findings of actual/promissory fraud in the Judgment.  See Mading v. Shepherd (In re Mading), 1994 WL 718767, at *1 (9th Cir. Dec. 27, 1994)(where jury makes specific finding of "yes" to actual fraud against debtor the judgment is conclusive on that specific jury finding and supports the damages awarded as a result of the fraud; issue preclusion properly applied); Cobe v. Smith (In re Cobe), 229 B.R. 15, 17 (9th Cir. BAP 1998)(bankruptcy court properly applied issue preclusion when it granted summary judgment based on jury's affirmative findings on all elements to support claim under § 523(a)(2)(A)); In re Davis, 486 B.R. 182, 190-92 (Bankr. N.D. Cal. 2013)(applying issue preclusion and granting summary judgment for § 523(a)(2)(A) claim based on jury's express findings of actual fraud).

Even if the bankruptcy court could have looked behind the Judgment to determine what misrepresentation(s) Debtor made, if any, to support the jury's finding of actual/promissory fraud, we reject Debtor's argument that Tran's debt could not be excepted from discharge because he was not involved in obtaining any of the loans from Tran.

Section 523(a)(2)(A) also applies to a debtor who obtains an "extension, renewal or refinancing of credit."  An "extension of credit" is "an indulgence by a creditor giving his debtor further time to pay an existing debt."  John Deere Co. v. Gerlach (In re Gerlach), 897 F.2d 1048, 1050 (10th Cir. 1990) (internal quotation marks omitted).  Section 523(a)(2) protects a creditor

-19-

deceived into forbearing collection efforts. <u>Ojeda v. Goldberg</u>, 599 F.3d 712, 718-19 (7th Cir. 2010); <u>Lardner v. Biondo (In re Biondo)</u>, 180 F.3d 126, 131-32 (4th Cir. 1999) (extension of credit under § 523(a)(2)(A) is properly viewed as merely an agreed enlargement of time allowed for payment); <u>In re Gerlach</u>, 897 F.2d at 1050. The record, particularly the conclusion reached by the California Court of Appeal, reflects that: Debtor made false oral promises of repayment to Tran; Tran extended the time for repayment of the loans based on Debtor's false promises to repay; and she was deceived into forbearing her collection efforts as a result and suffered damages.

Thus, even if the jury's findings were based on Debtor's false promises to repay rather than representations made in connection with obtaining the loans initially, this is sufficient to establish fraud within the meaning of § 523(a)(2)(A).[4]

## VI. CONCLUSION

Because the bankruptcy court did not err in concluding that the issue of whether Debtor committed fraud within the meaning of § 523(a)(2)(A) was precluded by the Judgment and could not be relitigated in the bankruptcy court, and because no genuine issues of material fact were in dispute, summary judgment was properly granted to Tran. We AFFIRM.

---

[4] The bankruptcy court did not determine whether public policy favored applying issue preclusion in this case. However, because Debtor has not raised this issue on appeal, it has been waived. <u>Golden v. Chi. Title Ins. Co. (In re Choo)</u>, 273 B.R. 608, 613 (9th Cir. BAP 2002)(arguments not raised in appellant's opening brief are deemed waived).

-20-