

**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>DARIN A. MACK and DEBORAH L.<br>MACK,<br><div align="center">Debtors.</div> | BAP No. AZ-20-1034-TLB<br><br>Bk. No. 2:18-bk-09604-BKM<br><br>Adv. No. 2:18-ap-00454-BKM |
| DARIN A. MACK; DEBORAH L.<br>MACK,<br><div align="center">Appellants,</div><br>v.<br>CARTER UNRUH; JULIE UNRUH,<br><div align="center">Appellees.</div> | **MEMORANDUM**[*] |

Appeal from the United States Bankruptcy Court
for the District of Arizona
Brenda K. Martin, Bankruptcy Judge, Presiding

Before: TAYLOR, LAFFERTY, and BRAND, Bankruptcy Judges.

## INTRODUCTION

Chapter 7[1] debtors Darin A. Mack and Deborah L. Mack appeal from

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, all "Civil Rule" references are to the Federal Rules of Civil

(continued...)

the bankruptcy court's summary judgment order excepting a California default judgment from discharge. Debtors contend that the bankruptcy court erred by granting summary judgment based on issue preclusion. We agree. Thus, we REVERSE and REMAND for further proceedings.

**FACTS**

Prepetition, Carter and Julie Unruh made two loans totaling $140,000 to a retail archery business, Absolute Archery LLC ("Archery"). The loans were evidenced by two promissory notes (the "Notes") that required quarterly 10 percent per annum interest-only payments, followed by a balloon payment on the maturity dates. They also included an attorneys' fee provision that provided for payment of costs of collection. Archery provided a lien on its inventory as collateral, and Debtors, Archery's owners, personally guaranteed these obligations.

We know little about the Unruhs' decision to make these loans; fraud in the inducement is not alleged. But the record reflects that Archery eventually found its financial quiver empty; it ceased its business operations and payments on the Notes.

The Debtors then offered Archery's inventory as partial payment on the Notes and proposed a coordinated settlement plan for repayment of the

---

[1](...continued)
Procedure, all "CCP" references are to the California Code of Civil Procedure, and all "CCC" references are to the California Civil Code.

remainder of the debt owed to the Unruhs. In these conversations, Debtors allegedly represented that the remaining inventory had a cost value of $97,509.00. The Unruhs accepted the turnover of collateral but later determined that it had a cost value of only $60,932.44.

Prospects for the coordinated settlement then vanished. The Unruhs demanded payment in full of the Notes' balances and asserted fraud based, at least partially, on the approximately $35,000 discrepancy in the cost value of the surrendered inventory. Their demand letter requested $123,400 for money due on contract and other theories. They then filed a complaint against Debtors and Archery in the El Dorado, California Superior Court. The complaint included breach of contract, fraud, money had and received, conversion, unfair business practices, and negligent misrepresentation causes of action.

The breach of contract and money had and received causes of action were largely based on the payment defaults; each sought recovery of at least $106,400.33, plus interest, costs, and attorneys' fees.

As to the fraud cause of action, the complaint alleged that: (1) Debtors misrepresented the value of Archery's inventory; and (2) Debtors misrepresented that they had turned over all inventory. It further alleged that "[h]ad [the Unruhs] known the actual facts, they would not have been so agreeable to receiving the inventory" and that they suffered damages of at least $123,400.00 as a result of such "fraud and deceit." The complaint

3

sought punitive damages in connection with this cause of action, but it did not request fraud-based recovery of either attorneys' fees or interest.

And while the Unruhs' negligent misrepresentation claim was based on the same operative facts as their fraud claim, the complaint alleged a much lower amount of damages, at least $36,436.86, and requested an award of interest and collection costs.

The cause of action for conversion related, as did the fraud and negligent misrepresentation assertions, to Debtors' alleged interference with the Unruhs' right to their inventory collateral; as with negligent misrepresentation, the Unruhs asserted damages of at least $36,436.86, plus interest and collection costs.

Finally, the Unruhs appear to have used the unfair business practices cause of action as a catchall and generally alleged "unlawful, unfair, and/or deceptive acts and omissions" and damages "to be determined [sic] to proof," plus attorneys' fees, costs, and interest.[2]

The prayer in the state court complaint did not differentiate between the causes of action or attempt to reconcile the disparate requests for recovery. Instead, it baldly requested compensatory damages of "no less than $123,400.00," interest, attorneys' fees, and costs.

Debtors and Archery did not timely respond to the complaint, and the state court entered their default. Pursuant to a CCP § 585 motion, it

---

[2] The Unruhs also sought an accounting.

entered a default judgment against Debtors and Archery in the amount of $150,616.30, consisting of $123,400.00 in damages, $20,381.40 in prejudgment interest at a rate of 10 percent per annum, $5,768.00 in attorney's fees, and $1,066.90 in costs (the "Default Judgment"). The Default Judgment included no findings and made no attempt to specify the particular causes of action that formed the basis for the award of damages, attorneys' fees, and interest.

Debtors filed their chapter 7 case after the expiration of the appeal period for the Default Judgment. Thus, the Default Judgment entered bankruptcy with unassailable finality under California law. Nonetheless, they clearly aimed to leave Archery and its financial problems behind them. But their filing missed the mark. The Unruhs filed an adversary complaint to except the Default Judgment from discharge under § 523(a)(2)(A) or (B) and promptly moved for summary judgment based on its alleged issue preclusive effect. They argued that, even though the Default Judgment contained no findings, it was necessarily based on their fraud claim because the damages awarded equaled the actual damages pled on the fraud cause of action.

Debtors opposed this motion and requested summary judgment in their favor. Their argument focused on the Unruhs' failure to plead a § 523(a)(2) claim with particularity and the assertion that fraud for § 523(a)(2)(A) purposes was not necessarily decided in the state court case

because the state court complaint did not allege that Debtors obtained "money, property, services, or an extension, renewal, or refinancing of credit" through the alleged fraud.

During the hearing on the summary judgment motions, Debtors also argued that the Unruhs failed to plead with specificity that they extended or modified the loans or otherwise suffered identifiable damages in reliance on Debtors' alleged misrepresentations concerning Archery's inventory. Therefore, they argued, "public policy, fairness, a lack of the identity of issues, there was no money obtained in exchange for the surrender of the collateral, [sic] all justifies a dismissal of [the Unruhs' adversary] complaint."

In the bankruptcy court's ruling, its discussion of the applicable standards was incomplete as it failed to note the public policy prong of the California issue preclusion analysis. *Khaligh v. Hadaegh (In re Khaligh)*, 338 B.R. 817, 824-25 (9th Cir. BAP 2006), *aff'd*, 506 F.3d 956 (9th Cir. 2007). It found that the other criteria for issue preclusion were met and that the Unruhs were entitled to summary judgment. It agreed with them that the nonspecific Default Judgment necessarily constituted a judgment based on fraud given the amount of damages. It entered an order granting them summary judgment, denying Debtors' summary judgment motion, and excepting the Default Judgment from discharge. Debtors timely appealed.

6

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(1) and (b)(2)(I). We have jurisdiction under 28 U.S.C. § 158, notwithstanding that the bankruptcy court did not memorialize its judgment in a separate document as required by Civil Rule 58(a), made applicable by Rule 7058. Over 150 days have elapsed since the bankruptcy court entered its order. *See* Rule 8002(a)(5)(A)(ii). In addition, "[t]he court's failure to comply with the separate-document requirement of Rule 58(a) . . . does not affect the validity of an appeal." Rule 8002 advisory committee's note to 2018 amendment.

## ISSUE[3]

Did the bankruptcy court err in granting summary judgment under § 523(a)(2)(A)[4] based on issue preclusion?

---

[3] We decline to address the Debtors' contention that the bankruptcy court also erred in failing to dismiss the adversary complaint because they cited no legal authority to the bankruptcy court or on appeal justifying such relief in summary judgment proceedings. *See Christian Legal Soc. Chapter of Univ. of Cal. v. Wu*, 626 F.3d 483, 487 (9th Cir. 2010).

[4] Neither the parties nor the bankruptcy court cited to or analyzed § 523(a)(2)(B) during the summary judgment hearing. Thus the bankruptcy court appears to have granted summary adjudication on the Unruhs' § 523(a)(2)(A) claim alone, though neither § 523(a)(2)(A) nor § 523(a)(2)(B) was referenced in its order. And neither party argues the merits of the § 523(a)(2)(B) claim on appeal. Accordingly, we will only consider whether summary adjudication was appropriate on the § 523(a)(2)(A) claim.

**STANDARDS OF REVIEW**

We review de novo the bankruptcy court's decisions to grant summary judgment and to except a debt from discharge under § 523. *Black v. Bonnie Springs Family Ltd. P'ship (In re Black),* 487 B.R. 202, 210 (9th Cir. BAP 2013). We also review de novo its determination that issue preclusion is available. *Id.* If issue preclusion is available, we then review its application for an abuse of discretion. *Id.* Under the abuse of discretion standard, we reverse where the bankruptcy court applied the wrong legal standard, it misapplied the correct legal standard, or its factual findings are illogical, implausible, or without support in inferences that may be drawn from the facts in the record. *See TrafficSchool.com, Inc. v. Edriver Inc.,* 653 F.3d 820, 832 (9th Cir. 2011).

**DISCUSSION**

**A. Governing law**

Summary judgment is appropriate if the pleadings and supplemental materials demonstrate that no genuine issue as to any material fact exists and the moving party is entitled to judgment as a matter of law. *Roussos v. Michaelides (In re Roussos)*, 251 B.R. 86, 91 (9th Cir. BAP 2000), *aff'd*, 33 F. App'x 365 (9th Cir. 2002). The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 n.10 (1986). Where that burden is met, "its opponent must do more than simply show that

there is some metaphysical doubt as to the material facts" to defeat the motion. *Id.* at 586-587 (citations omitted).

The issue preclusive effect of a state court judgment may be grounds for summary judgment in a nondischargeability proceeding. *See Grogan v. Garner*, 498 U.S. 279, 284-85 & n.11 (1991). Bankruptcy courts "must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). Thus, we apply California law.

In California, issue preclusion bars a party from re-litigating a previously decided issue in a second suit if: (1) the issue is identical to that decided in the first suit; (2) the issue was actually litigated in the first suit; (3) the issue was necessarily decided in the first suit; (4) the decision in the first suit is final and on the merits; and (5) the party is the same as, or in privity with, the party to the first suit. *Lucido v. Super. Ct.*, 51 Cal. 3d 335, 341-43 (1990). Even if these five criteria are present, its application must be in accord with the public policies of "preservation of the integrity of the judicial system, promotion of judicial economy, and protection of litigants from harassment by vexatious litigation[.]" *Id.* at 343.

And in the default judgment context, issue preclusion will only apply if: (1) the defendant was personally served with summons in the first suit or had actual knowledge of the existence of the suit; and (2) either the

record shows an express finding was made on the allegation for which preclusion is sought or the court in the first suit necessarily decided the issue. *Cal-Micro, Inc. v. Cantrell (In re Cantrell)*, 329 F.3d 1119, 1124 (9th Cir. 2003).

The party seeking application of issue preclusion bears the burden of proving all its criteria. *Kelly v. Okoye (In re Kelly)*, 182 B.R. 255, 258 (9th Cir. BAP 1995), *aff'd*, 100 F.3d 110 (9th Cir. 1996). Thus, the party must present a record sufficient to reveal the controlling facts and the exact issues litigated in the first suit. *Id.* Any reasonable doubt as to what was decided in the first suit will weigh against the application of issue preclusion. *Id.*

## B. The bankruptcy court erred in granting summary judgment for the Unruhs.

Debtors assert that the bankruptcy court erred in determining that the "identity of issues" and "necessarily decided" criteria for issue preclusion were met. They argue that the state court complaint failed to allege a debt was incurred for "money, property, services, or an extension, renewal, or refinancing of credit," and thus the state court did not decide the issue. We agree that, as pled, the fraud cause of action is problematic. But we center our decision on the determination that the bankruptcy court erred in finding the issue was "actually litigated" or "necessarily decided" and in neglecting to perform a public policy analysis.

**1. The Unruhs did not establish an identity of issues.**

Section 523(a)(2)(A) provides that a debt "for money, property, services, or an extension, renewal, or refinancing of credit" is excepted from discharge to the extent it was obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]" The statute requires proof by a preponderance of the evidence that: (1) the debtor made representations; (2) at the time the debtor knew the representations were false; (3) the debtor made the representations with the intention and purpose of deceiving the creditor; (4) the creditor relied on the representations; and (5) the creditor sustained a loss and damages as a proximate result of the representations having been made. *Lee v. Tcast Commc'ns, Inc. (In re Jung Sup Lee)*, 335 B.R. 130, 136 (9th Cir. BAP 2005).

Actual fraud under California law has the following mirror-image elements: (1) a misrepresentation; (2) knowledge of falsity; (3) intent to defraud; (4) justifiable reliance; and (5) resulting damage. *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 974 (1997), *as modified* (July 30, 1997). Thus, an actual fraud finding would satisfy the "identity of issues" criteria for issue preclusion in a § 523(a)(2)(A) action. *In re Jung Sup Lee*, 335 B.R. at 136. But here, the Default Judgment has no findings of fraud.

Turning to the state court complaint, the Unruhs alleged that after default Debtors misrepresented (1) the value of Archery's inventory; and

11

(2) that Debtors would turn over all inventory. But their allegation of damages was a nonspecific and unsupported statement of alleged harm in the amount no less than $123,400.00. Nowhere in the complaint did they articulate how they were damaged. They did not allege that they extended, renewed, or refinanced the loans based on the alleged misrepresentations. Nor did they allege that they released any right to pursue other contractual remedies or suffered damages as a result of a delay in collection activity.[5] Without such allegations in the complaint or such findings in the Default Judgment, they could not meet their burden to prove that a debt "for money, property, services, or an extension, renewal, or refinancing of credit" obtained by "false pretenses, a false representation, or actual fraud" was at issue in the state court case.

Apparently perceiving this shortcoming, the Unruhs changed course and argued in the adversary proceeding and on appeal that their loans were floor plan financing extended to Archery for its purchase of inventory and that the fraud at issue was Archery's sale of "mortgaged merchandise out of trust" in violation of the loans' terms. This argument is devoid of merit.

---

[5] We suspect that the Unruhs' failure to articulate how they were damaged was not a mere oversight. Ms. Unruh's declaration filed with the state court in support of entry of the default judgment similarly failed to set forth any concrete damages sustained from the alleged misrepresentations. Neither did their adversary complaint and related summary judgment motion explain how they were damaged.

The Unruhs failed to allege facts in their complaints establishing that the loans were floor plan financing. And a review of the documents in the record establishes that these loans do not remotely resemble floor plan financing or a "sale out of trust scenario." Nothing in the complaints or the Notes indicates that the Unruhs extended financing for the sole purpose of Archery's acquisition of inventory, that the Notes required payment to the Unruhs upon the sale of inventory, or that Debtors and Archery agreed to hold inventory sale proceeds in trust for the Unruhs. *See Keys Jeep Eagle, Inc. v. Chrysler Corp.*, 897 F. Supp. 1437, 1440 (S.D. Fla. 1995) (describing floor plan financing), *aff'd sub nom. Keys Jeep Eagle v. Chrysler Corp.*, 102 F.3d 554 (11th Cir. 1996). In any event, "selling [inventory] out of trust is not inherently fraudulent," which is "[p]erhaps [why] non-dischargeability claims against car dealers for selling out of trust are typically brought as conversion claims under section 523(a)(6) rather than as claims under section 523(a)(2)." *Mannheim Auto. Fin. Servs., Inc. v. Park (In re Park)*, 314 B.R. 378, 383 & 383 n.2 (Bankr. N.D. Ill. 2004). This case involves a garden variety inventory secured loan; attempts to argue that it is flooring or an out of trust situation are frivolous.

Thus, we agree with Debtors that the fraud claim as pled in the state court action is deficient. But the failure to participate in the state court action to the point of default and to not exercise appellate rights have import. To determine the consequences of these lapses, we must analyze

13

the Default Judgment on other bases.

**2. The issues were not necessarily decided.**

While we agree with Debtors' analysis of the deficiencies in the allegations of fraud, we also acknowledge that even a grievous error in the identity of issues prong might be insufficient to support a reversal here if, in entry of the Default Judgment, the elements of a fraud claim were necessarily decided. Even if we discern insufficient allegations in the state court complaint and a lack of support in the CCP § 585 default prove-up, it may still form a basis for summary judgment based on issue preclusion if the state court necessarily determined, albeit perhaps erroneously, that a fraud occurred. In such a case, the proper recourse would be an appeal, and, faced with a final judgment, the bankruptcy court would not be free to disregard the complaint's inadequacies. But here, fraud was not necessarily decided; the state court could have entered its judgment without finding fraud. *See Harmon v. Kobrin (In re Harmon)*, 250 F.3d 1240, 1248 (9th Cir. 2001). Indeed, it appears that the Default Judgment—at least in part and possibly in its entirety—is based on contract or other non-fraud theory.

We do not agree that the state court necessarily awarded damages for fraud because the $123,400.00 damages amount was the same amount set forth in the fraud cause of action. Although the Unruhs sought different, lesser, amounts for each of their non-fraud causes of action, cumulatively, such amounts exceeded $123,400.00. It is possible that the damages award

14

was under multiple non-fraud claims.

The fact that the total amount awarded was the exact amount requested on the fraud claim is inconsequential because it is also the same amount the Unruhs requested in compensatory damages in their prayer.[6] Given the prayer's request for only $123,400.00 in compensatory damages, CCP § 580(a) placed a $123,400.00 ceiling on the amount of compensatory damages that the state court could award them on default.

CCP § 580(a) provides that "[t]he relief granted to the plaintiff, if there is no answer, cannot exceed that demanded in the complaint[.]" That statute has been interpreted to mean that a plaintiff cannot be awarded more than she requests in her prayer. *See Barragan v. Banco BCH*, 188 Cal. App. 3d 283, 305 (1986) (holding that default judgment was limited to $500,000 where various claims alleged compensatory damages of $1,000,000, but prayer requested only $500,000). Thus, if the state court found Debtors liable for compensatory damages under multiple non-fraud claims in a total amount greater than $123,400.00, it only had authority to award up to $123,400.00.

This possible explanation for the award amount is not only likely but highly probable considering the attorneys' fees and prejudgment interest awarded.

---

[6] It is also the amount the Unruhs utilized in their pre-litigation demand letter "to avoid legal proceedings for breach of contract, fraud, conversion, common counts and related claims."

15

The Unruhs requested neither attorneys' fees nor interest under their fraud cause of action. Likewise, the declarations they filed in support of entry of the Default Judgment cited the Notes as the basis for attorneys' fees. There is no evidence in the record establishing that they requested an award of either attorneys' fees or interest based on fraud.

Additionally, neither California law nor the Notes support an attorneys' fee award based on a fraud recovery. Without citing to any authority, the Unruhs assert that a prevailing party in a California fraud action may recover attorneys' fees as damages. To the contrary, there is no general right to attorneys' fees in California based on fraud or otherwise, and, to the extent fees are recoverable based on express statute or agreement, they are recovered as costs. *See Santisas v. Goodin*, 17 Cal. 4th 599, 607 n.4 (1998).

Under CCP § 1032: "a prevailing party is entitled as a matter of right to recover costs in any action or proceeding." *Id.* at 606 (quoting CCP § 1032). But CCP § 1033.5 limits the allowance of fees as "costs" under CCP § 1032 to instances where fees are authorized by contract, statute, or other law. *Id.* Here there is neither a statutory nor a contractual right to collect fees based on torts related to the contract. Narrowly drafted contract provisions that merely provide for attorneys' fees to enforce or interpret a contract do not cover tort claims. *Exxess Electronixx v. Heger Realty Corp.*, 64 Cal. App. 4th 698, 713 (1998). Such is the case here because the operative

fee provision merely obligates Debtors to pay the Unruhs' fees incurred as a cost of collection after a payment default. Thus, they could not recover fees on their fraud claim. And, again, they never sought attorneys' fees based on fraud in the state court action; as discussed above, the Default Judgment could not grant relief not requested in their complaint.

Neither could they have recovered the prejudgment interest awarded under the Default Judgment exclusively for fraud. While courts have some discretion to award prejudgment interest in fraud cases under CCC § 3288, they do not have the authority to award interest at a rate higher than 7 percent per annum from the date the claim arose unless a statute provides otherwise. *See* Cal. Const. art. XV, § 1; *Children's Hosp. & Med. Ctr. v. Bonta*, 97 Cal. App. 4th 740, 774–75 (2002). And there is no statute that provides otherwise in a fraud case. *Michelson v. Hamada*, 29 Cal. App. 4th 1566, 1585-86 (1994), *as modified* (Nov. 14, 1994), *as modified on denial of reh'g* (Nov. 17, 1994), *as modified* (Nov. 22, 1994). Thus, if the Default Judgment was based solely on the fraud claim, the prejudgment interest would have been at a rate of 7 percent per annum, or less. Instead, it was at the higher rate of 10 percent per annum—an appropriate rate given the breach of contract claim based on the Notes. *See* Cal. Const. art. XV, § 1(a); CCC § 3289.

Accordingly, the state court could have entered the Default Judgment without finding fraud. And this reality injects an ambiguity into the analysis that bars a summary judgment based on issue preclusion. As

noted, any ambiguity is construed against the party seeking application of issue preclusion. And this ambiguity is fatal to the Unruhs' request for summary judgment. What, if any, portion of the damages relate to the fraud cause of action? This ambiguity bars issue preclusion as a basis for summary judgment because it conceals what was decided. This is particularly problematic as the Unruhs provided no evidence of damages from fraud in their CCP § 585 motion for entry of the Default Judgment. And it is this ambiguity, rather than the defects in the allegations of the state court complaint and the default prove-up as it relates to the claim of fraud, that requires reversal here.

**3. The issues were not actually litigated.**

Neither could the bankruptcy court soundly determine that the state court actually litigated the issue of fraud. Issues are "actually litigated" in a default judgment scenario only where the record shows that the court in the first suit either: (1) made an express finding upon an allegation for which preclusion is sought; or (2) necessarily decided the issue. *See Baldwin v. Kilpatrick (In re Baldwin)*, 249 F.3d 912, 919 (9th Cir. 2001). The Default Judgment contained no findings; nothing expressly states that it was based on fraud. And, as already discussed, the state court did not necessarily decide the fraud-related issue; it was able to enter the Default Judgment based on theories other than fraud if it so decided. Indeed, given the complete absence of fraud evidence in the default prove up, it is

18

possible—and indeed probable—that fraud was not the basis for the Default Judgment in whole or in part.

Based on the foregoing, the bankruptcy court erred in determining that issue preclusion was available.

**4. The bankruptcy court failed to consider public policy.**

Finally, given the infirmities we note, it was imperative that the bankruptcy court conduct a public policy analysis before applying issue preclusion. The bankruptcy court's decision to apply issue preclusion was ultimately a discretionary matter, depending on whether the policies of "preservation of the integrity of the judicial system, promotion of judicial economy, and protection of litigants from harassment by vexatious litigation" were met by its application. *Lucido*, 51 Cal. 3d at 343-44. But the bankruptcy court appeared to believe that it had no discretion here. The public policy analysis might or might not have led to a different conclusion. This is not a case where we can say unambiguously that error in this regard was harmless based on the record.

Indeed, the bankruptcy court expressed misgivings about the fairness of granting the Unruhs summary judgment based on issue preclusion:

> Moreover, in this Court, if this Court had the ability to review the state court judgment and make a finding independent of the default judgment, it would likely rule in the Debtors' favor as it does not appear the [Unruhs] incurred damages, particularly not $123,400 based on the fraudulent inventory count. And as Debtors point out, there's no allegation

that there was any fraud involved in the original loan that was made to these Debtors.

We agree with these observations.[7] Further analysis on this point appears appropriate.

## CONCLUSION

Based on the foregoing, we REVERSE the bankruptcy court's grant of summary judgment and REMAND for further proceedings.

---

[7] We also note that Mr. Mack was not personally served with summons in the state court case and nothing in the record proves that he had actual knowledge of the state court case prepetition. Given the fact that his wife and Archery were co-defendants who received service, it is highly probable that he knew about the litigation. But this fact should have been considered in the public policy context or otherwise.